[Civ. No. 6359.   Fourth Dist.   Jan. 20, 1961.]

LOUIS J. REES et al., Respondents, v. CITY OF PALM SPRINGS et al., Appellants.

340

Jerome J. Bunker for Appellants.

Lewis Garrett and Lionel Richman for Respondents.

SHEPARD, J.—By this action plaintiffs sought and obtained a judgment enjoining enforcement of certain sections of an ordinance of defendant city purporting to "regulate" picketing. Defendants appeal.

The facts as shown by the record before us are, in general, as follows: November 14, 1956, the city council of the city of Palm Springs enacted an ordinance under the title "Labor." Section 2910 thereof recites the growth of the city; its traffic difficulties in the business area; the necessity of preventing unreasonable obstruction on its streets, and declares that picketing in labor disputes has caused unreasonable obstruction. Section 2911.1 describes picketing as walking, marching, or patrolling on a public way about or near to any place for the purpose of disseminating information regarding a labor dispute. Section 2911.2 defines a public way. Section 2911.3 defines a place of business. Section 2911.4 describes a labor dispute as one concerning wages, conditions of employment or union membership. Section 2912 states:

"NUMBER OF PICKETS LIMITED. It shall be unlawful for any person or organization to engage in picketing where the number of pickets is in excess of the following limitations: . . ."

Then follow five paragraphs covering Palm Canyon Drive and Indian Avenue between Tachevah Drive and Ramon Road, permitting one picket for each 30 feet of frontage in that area, and one picket for each 20 feet of frontage in any other part of the city, but allowing at least one picket to each place of business regardless of distance limitations. Sections 2913, 2914 and 2915 read as follows:

"2913. CONFINEMENT OF PICKETING TO LOCATION OF DISPUTE. It shall be unlawful for any person to picket on the public way in front of or adjacent to or along the premises of any business establishment of any employer with whom, or with whose employees, he does not have a labor dispute.

"2914. BLOCKING OF ENTRANCES. It shall be unlawful for any person to picket on any public way in a stationary manner within the width of any entrance to any place of business and no person shall picket on any public way within the width of any entrance to any place of business except while moving past such entrance at the rate of a normal walking pace.

"2915. METHOD OF PICKETING. It shall be unlawful for any person to picket in any circular, oval or rectangular pattern, said person in order to proceed in an opposite direction must reverse his direction and retrace his steps so as to always be moving in single file.''

Sections 2915.1 and 2916, respectively, cover limitations on size of placards carried and use of a public street primarily designed for vehicular traffic. Section 2917 reads as follows:

''CONGREGATING INTO GROUPS. It shall be unlawful for persons engaged in picketing, in such instances where more than one picket is allowed under the provisions of this section, to congregate into groups, but such persons shall keep a reasonable distance between themselves so as to allow free passage of persons seeking to enter, leave or pass by the premises involved in the labor dispute.''

Sections 2918, 2919, 2919.1 and 2919.2, respectively, relate to prohibition of use by pickets of stationary advertising objects on the public way; contain reservations stating that the ordinance does not authorize unlawful, disorderly picketing, nor limit the power of courts, nor authorize unlawful conduct; provide criminal penalties; and repeal certain other ordinances. With these sections we are not concerned because sections 2913, 2914, 2915 and 2917 are the only ones subject of attack, and are the only ones included in the injunction.

At the time of trial, appellant city offered the testimony of Philip Abrams, director of public works for appellant. The transcript of this offered evidence is before us. The substance of this evidence was Abrams' qualifications in planning and construction of military camps, civil engineering, sanitary engineering, map making, and street planning before and after becoming, in 1959, director of public works for appellant city. An aerial map of the portion of the city described in section 2912 of the ordinance, covering about 11 blocks along both sides of Palm Canyon Drive and Indian Avenue shows widths of streets, locations of sidewalks and buildings, as well as other details. His testimony further described the zoning of this area as C-1a, or retail business district, and gave a general

outline of the city zoning designations; the fluctuations in width and continuity of sidewalks; and stated that in his opinion no picketing whatever should be allowed in this area during the influx of tourists from November to April when the city's population increases from 10,000 to 60,000. He further stated: "One picket per 30 feet of frontage on Indian Avenue, as I stated before, would just lend to the serious pedestrian traffic congestion that exists presently for a good portion of the year."

He described the lack of sidewalks throughout the city outside the mapped area, and the general traffic hazard of picketing. No attempt was made to make any comparison between this city and any other city. This was the only evidence offered. It was rejected by the trial court.

### REGULATORY RESTRICTIONS ON PICKETING MUST NOT UNREASONABLY DISCRIMINATE

Appellants contend that the sections 2912, 2913, 2914, 2915 and 2917 of article 291, which were declared invalid by the court's judgment, are a reasonable exercise of appellants' police power and are valid on their face, and that the court's judgment was therefore erroneous.

We believe a detailed review of the plethora of judicial discussion which has been written on this subject since the commencement of the industrial era in the United States, would serve no good purpose, for the innumerable variations have been the result of both the particular circumstances of each case and the cyclic progression of judicial thought. Authorities involving injunctions are of little value in themselves, because they all concern factual circumstances relating to attempted proof of unlawful acts requiring judicial intervention. Suffice it to say that the time has long since passed when any contention is made against the lawful rights of peaceful picketing for a lawful purpose. (*McKay* v. *Retail Auto. Salesmen's Local Union No. 1067,* 16 Cal.2d 311, 319 [3] [106 P.2d 373].) ▪▪ As was said in *American Federation of Labor* v. *Swing,* 312 U.S. 321, 326 [61 S.Ct. 568, 85 L.Ed. 855] :

"A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace.

[Citation.] The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case. [*Thornhill* v. *Alabama*, 310 U.S. 88, 105, 60 S.Ct. 736, 746, 84 L.Ed. 1093.] 'Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' "

█ Another fundamental rule stated by our Supreme Court in *Valentine* v. *Chrestensen*, 316 U.S. 52, 54 [62 S.Ct. 920, 86 L.Ed. 1262], is as follows: "This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares."

While the above case dealt with a situation different from that here at bar, it is a sufficiently accurate statement of the broad fundamental rule that it properly belongs in our present discussion. █ We think it is also clear that public legislative authority may, when necessary, regulate within reasonable bounds, the use of public places and ways for the exercise of freedom of speech and of the press, including picketing, so long as such regulation does not unreasonably discriminate among our citizens nor place undue burdens upon the exercise of these constitutional rights. But when the regulation transcends the reasonable necessity of the circumstances or unreasonably discriminates between citizens in their exercise of normal constitutional rights, the legislative pronouncement becomes invalid.

It is well to first note that our State Legislature in its Penal Code definitions of riot (404), rout (406), unlawful assembly (407), refusal to disperse (409), and disturbing the peace (415), with the penalties connected therewith, has generally provided the means for officers to control any wilful and malicious obstruction of the citizens' free use of a public way. These are the time-honored vehicles provided by the state for

the orderly suppression of those deviants who occasionally seek to disturb the peaceful pursuit of private affairs by the members of society. The public generally is well acquainted with their provisions and a prosecution based thereon rarely fails of conviction if the evidence properly shows a defendant has, in fact and in truth, offended against their provisions. Experienced law enforcement officials scrutinize with jaundiced eye the attempted engraftment in local ordinances of descriptions of portions of these offenses. Almost invariably such attempts partially or wholly duplicate the provisions of one or more of these or other sections of the state law and too often are enacted in an attempt to discriminate their application against restricted segments of society, leaving the general public untouched. This is the exact circumstance we find in the case at bar. Practical considerations make duplication of the state's legislative program covering a particular field of legislation unsatisfactory, for such duplications nearly always result in uncertainty and confusion. ▮▮ The power granted to a local body to enact ordinances is not only a delegation but a limitation upon the local body, and when there is doubt whether an attempted regulation invades a field occupied by the state, the doubt must be resolved in favor of the legislative authority of the state. (*Abbott* v. *City of Los Angeles,* 53 Cal. 2d 674, 681-682 [349 P.2d 974].)

▮ While the ordinance sections here under attack may not of themselves sufficiently impinge upon the field occupied by the Penal Code sections above noted to be declared void for that reason alone, they do bear the stamp so commonly noted in this type of attempted legislation, of attempting to unreasonably regulate and discriminate in their application to a small segment of society, leaving all other members of society in a similar situation untouched and unregulated. For example, a group of newsboys could collect at any one of the places here involved, blocking the entrance to one or more of these stores; college or high school young men could assemble in disagreement with some store policy or in exuberant rallies; racial groups might congregate in protest; adjoining or competing businessmen might gather to object to what they considered unfair business practices not specially prohibited by law; irate citizens in general might come to stand and protest; curious shoppers attracted by some unusual display might block the sidewalk for hours or even days; judges, lawyers or police officers in convention might stand and discuss problems connected or disconnected with the affairs of the business

or hotel in front of which they were standing; wives and mothers, objecting to a window display, or business policy, might gravitate together on the sidewalk; or even groups with no purpose whatever might find a particular spot attractive to stand and gossip; but nothing in the ordinance would attach to them. These and hundreds of other examples could be recounted of what has and does frequently happen throughout the United States and the whole world. All are lawful activities under the freedom of speech and press guarantees of our Constitution. Only in their manner of doing do they sometimes become unlawful. No court would have any difficulty in declaring unconstitutional any ordinance specially and solely directed at a single one of these groups and excluding all others with respect to the same physical activity. Yet here the ordinance of appellant city seeks to single out and discriminate a single small segment of the public and punish it for acts which for the vast majority of others remain perfectly lawful. That a few courts in the past have applied the fallacious reasoning of their day to these problems is no reason to continue to do so.

As hereinbefore pointed out, the lawful character of peaceful picketing for a lawful purpose is now firmly established. Only the improper manner of its conduct by real or threatened violence or other unlawful act or purpose make it unlawful.

The section of the ordinance (2912) forbidding pickets to be closer than 30 feet apart in a prescribed area, does not appear to have any reasonable basis for discrimination between members of the public desiring to speak of labor problems and those desiring to communicate with others on different problems. The section (2913) forbidding picketing of a place adjacent to a business with whom the picket does not himself have a labor dispute is subject to the same objection voiced in *People* v. *Gidaly,* 35 Cal.App.2d Supp. 758, 765 [3] [93 P.2d 660]; and *Messner* v. *Journeymen Barbers etc. International Union,* 53 Cal.2d 873, 878 [5] [351 P.2d 347]. It does not appear to have any relationship to the announced purpose of protecting traffic, and it would be otherwise repugnant to the rights of free speech. (*In re Lyons,* 27 Cal.App.2d 293, 306 [81 P.2d 190].)

The section prohibiting picketing in a stationary manner (2914) is susceptible of the construction that it means anywhere within the lateral lines of the entrance extended indefinitely forward into the street. It can be well under-

stood that a car parked at the curb would occupy the space of 10 or 20 standing people. A picket standing at the curb could well be less obstructive than one standing or moving outside the lateral lines but immediately adjacent to the entrance. The wilful and malicious blocking of the passage of another on a public way is, of course, already unlawful and may be enjoined. (*Chrisman* v. *Culinary Workers Local No. 62,* 46 Cal.App.2d 129 [115 P.2d 553].) To discriminate against one person on lawful business without applying the same rule to all other persons similarly situated appears to have no sound basis in reason, and is contrary to his constitutional right of equal protection of the laws. Furthermore, the form of the language is sufficiently vague that in the hands of a person desiring to harass another, it might well be utilized to harass a person standing or moving well out in the street.

The section forbidding a picket to walk in a circular, oval or rectangular manner and that he must reverse his steps so as to always move in single file (2915), gives no appearance of accomplishing traffic safety. Incidentally, just how he would walk in single file by himself does not appear. As was said in *In re Bell,* 19 Cal.2d 488, 496 [122 P.2d 22] : ''Language prohibiting conduct that may be prohibited and conduct that may not affords no reasonably ascertainable standard of guilt and is therefore too uncertain and vague to be enforced.''

It has been frequently intimated or directly held in many cases that the state's legislative authority may reasonably regulate picketing, but for such regulation to validly discriminate the lawful acts of one citizen from the like lawful acts of another citizen some reasonable cause must clearly appear. In the case at bar, we can find no valid reason why the discrimination here sought to be imposed should be allowed to override that very precious and salutatory principle of constitutional law generally requiring application equally to all citizens under like circumstances. The sections attacked are on their face, invalid.

### Evidence Offered

Appellants complain of the refusal of the court to receive certain proffered evidence, the substance of which is hereinbefore set forth. This evidence does not, of itself, show any peculiarity or difference between appellant city and any other city upon which a distinction or discrimination applying solely

and only to those desiring to express their views on labor matters could attach. It was the only evidence offered by appellants. The court's refusal to receive it under the circumstances was proper.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.