[L. A. No. 26854. In Bank. March 12, 1963.]

JOE WOLLAM, Individually and on Behalf of the Members of CULINARY WORKERS AND BARTENDERS UNION, LOCAL 535, Plaintiff and Respondent, v. CITY OF PALM SPRINGS et al., Defendants and Appellants.

Jerome J. Bunker, City Attorney, for Defendants and Appellants.

Lionel Richman, Lewis Garrett and Herbert M. Ansell for Plaintiff and Respondent.

TOBRINER, J.— While an ordinance may properly regulate the use of sound trucks if narrowly drawn to avoid specific evils, such as raucous noise or traffic congestion, an ordinance which indiscriminately sweeps within its ambit an inhibition of the communication of a message invades the right of free speech. Because, as we shall show, the instant ordinance falls within the latter category, it cannot stand.

On August 27, 1958, the City Council of Palm Springs enacted Ordinance No. 395, adding chapter 44 to the city's ordinance code. The ordinance governs the use of sound trucks; it consists of five articles, each article incorporating numerous provisions. Article 440 contains definitions applicable throughout the chapter; article 441 governs registration of trucks for commercial use; article 442 covers trucks for noncommercial use; article 443 sets up regulations pertaining to the use of both commercial and noncommercial trucks; and article 444 provides penalties and a provision for separability.

Both the commercial and noncommercial user must file a registration statement with the chief of police containing specified information, including the name of the owner and user of the truck, the wattage and volume of the equipment of the truck, and the distance for which sound will be thrown from the truck. The registration statement, after being certified by the chief of police and returned to the applicant, apparently serves as a license for use. The chief of police "shall not return to the applicant a certified copy of the Registration Statement," if he finds, among other matters, that the conditions of pedestrian movement are such that the sound truck "would constitute a detriment to traffic safety" or if the application reveals that the applicant would violate the regulations prescribed in article 443.

Article 443 restricts the hours of use to four specified hours a day, totally forbidding utilization on Sundays and holidays; it prohibits the operation of sound trucks unless the truck

proceeds at a speed of at least ten miles per hour;[1] it requires that the volume of sound be controlled so that it will not be audible in excess of 200 feet from the truck, not be unreasonably loud, raucous, jarring, disturbing, and not be a nuisance to persons within the area of audibility;[2] it limits the equipment usable to that having a maximum output of 15 watts, and it includes other provisions not presently pertinent.

Plaintiff Wollam brought this action on behalf of himself and the members of the Culinary Workers and Bartenders Union, Local 535, attacking the ordinance as unconstitutional. The trial court upheld this contention upon the ground that the ordinance unconstitutionally sought to prevent stationary use of sound trucks.

The stipulated facts recite that "As part of its campaign to make known to members of the public the existence of payment of substandard wages by certain employers and the existence of substandard working conditions . . . plaintiffs have from time to time adopted various means of peaceful publication. These have included, among other things, the use of sound amplification equipment containing only human speech and containing a statement of grievances of employees. Said sound amplification equipment has been placed in an automobile which has been parked at the curb during the time said sound amplification equipment is in use." The stipulation further states that plaintiff desires to use only stationary sound trucks, and that defendants will enforce the ordinance and arrest any violators.[3]

The sole issue before this court relates to the constitutional

---

[1]Section 4430.3 of article 443 provides: "Sound amplifying equipment shall not be operated unless the sound truck upon which such equipment is mounted is operated at a speed of at least ten (10) miles per hour except when said truck is stopped or impeded by traffic. Where stopped by traffic, the sound amplifying equipment shall not be operated for longer than one (1) minute at each such stop."

[2]Section 4430.7 of article 443 reads: "The volume of sound shall be controlled so that it will not be audible for a distance in excess of two hundred feet (200') from the sound truck, and the volume of sound shall be so controlled that it will not be unreasonably loud, raucous, jarring, disturbing, or a nuisance to persons within the area of audibility."

[3]A previous ordinance of the City of Palm Springs which purported to regulate picketing was declared unconstitutional in *Rees* v. *City of Palm Springs* (1961) 188 Cal.App.2d 339 [10 Cal.Rptr. 386]. That ordinance in part rested upon "the necessity of preventing unreasonable obstruction on its streets." (P. 341.) The court pointed out, among other matters, that "when the regulation transcends the reasonable necessity of the circumstances . . . the legislative pronouncement becomes invalid." (P. 344.)

validity of section 4430.3 which the trial court concluded to be invalid "insofar as it applies to the dissemination of information from motor vehicles lawfully parked by requiring said motor vehicles to be ambulatory." To resolve the stated problem we must answer two questions. First, does the freedom of speech guaranteed by the First Amendment, which admittedly applies to the content of the communication, extend, as well, to the means of communication? More particularly, does it include sound trucks? Second, if so, does the section in question exceed the permissible range of regulation so as to impinge on constitutionally guaranteed rights? For the reasons hereinafter set out we believe that both of these questions should be answered affirmatively.

We turn first to the question of whether the protection of free speech as incorporated into the Fourteenth Amendment[4] extends to the use of a sound truck as a means of dissemination of opinion. Our problem here emanates primarily from two decisions of the United States Supreme Court rendered within a half year of one another. Reconciliation of the results reached in these two cases has caused difficulty to the commentators[5] and to this court.[6]

In the first of these cases, *Saia* v. *New York* (1948) 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], the court declared unconstitutional an ordinance of the City of Lockport, New York, which prohibited the use of sound amplifying equipment unless authorized by the chief of police. Saia, a Jehovah's Witness, suffered conviction for violation of the ordinance in setting up a loud speaker in a public park and broadcasting religious programs without obtaining a permit from the chief of police.

Justice Douglas, speaking for the majority of the United States Supreme Court, held that the use of this means of communication fell within the protection of free speech of the First Amendment and that the ordinance failed. Instead of narrowly and specifically prohibiting the abuses that precipitated the ordinance, it granted a general discretion to the chief of police which could be applied in an area wide of the mark. The court explained, "The statute is not narrowly

[4]This inclusion is no longer open to question. See e.g., *Smith* v. *California* (1959) 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205].

[5]See 34 Cornell L.Q. 626; 62 Harv. L. Rev. 1228; 47 Mich. L. Rev. 1007; 14 Mo. L. Rev. 194; 22 So. Cal. L. Rev. 416; 2 U.C.L.A. L. Rev. 561; 97 U. Pa. L. Rev. 730.

[6]*Haggerty* v. *Associated Farmers of California* (1955) 44 Cal.2d 60 [279 P.2d 734].

drawn to regulate the hours or places of use of loudspeakers, or the volume of sound (the decibels) to which they must be adjusted. . . . The right to be heard is placed in the uncontrolled discretion of the Chief of Police. He stands athwart the channels of communication as an obstruction which can be removed only after criminal trial and conviction and lengthy appeal. A more effective previous restraint is difficult to imagine. . . . Loudspeakers are today indispensable instruments of effective public speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached. . . .''

Indicating that narrowly drawn regulation of sound trucks would be permissible, although prohibition in the uncontrolled discretion of the chief of police would fail, Justice Douglas stated, ''The present ordinance would be a dangerous weapon if it were allowed to get a hold on our public life. Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loud-speakers because their use can be abused is like barring radio receivers because they too make a noise. . . . Any abuses which loud-speakers create can be controlled by *narrowly drawn* statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. . . .'' (Pp. 560-562; italics added.)

Justice Frankfurter, with Justices Reed and Burton concurring, dissented upon the basis that ''the limitations by New York upon the exercise of *appellant's rights of utterance* did not . . . exceed the accommodation between the conflicting interests which the State was here entitled to make in view of the time and place and circumstances.'' (At p. 566; italics added.) Justice Jackson, alone of the members of the court, held that the regulation did not involve the issue of free speech.

In the second case to which we alluded, *supra, Kovacs* v. *Cooper* (1949) 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608], the Supreme Court sustained a conviction under an ordinance of the City of Trenton, New Jersey, which read: ''That it shall be unlawful for any person . . . to . . . operate . . . for any . . . purpose whatsoever, on or upon the public streets, alleys or thoroughfares in the City of Trenton, any device known as a sound truck, loud speaker or sound amplifier . . . which emits therefrom *loud and raucous noises* and is attached to and upon any vehicle operated or standing

upon said streets or public places aforementioned." (P. 78; italics added.)

Chief Justice Vinson and Justice Burton joined with Justice Reed, who announced the opinion of the court. While the decision construed and upheld the ordinance as a limited prohibition of equipment emitting "loud and raucous noises," it did not sustain the power of the state absolutely to prohibit the use of sound trucks. In fact, Justice Reed stated: "Absolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities." (At p. 82.) The court sustained the Trenton ordinance as a reasonable legislative regulation, saying, "City streets are recognized as a normal place for the exchange of ideas by speech or paper. But this does not mean the freedom is beyond all control. We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a *loud and raucous volume,* from the public ways of municipalities." (P. 87; italics added.)

Justices Frankfurter and Jackson in separate opinions concurred with the majority for the same reasons which prompted them to dissent in *Saia.* Justice Murphy dissented without opinion.

In an opinion in which Justices Douglas and Rutledge concurred, Justice Black also dissented. The basic thrust of Justice Black's opinion indicated that the court's limitation of the ordinance to equipment emitting loud and raucous noises lacked support; that the defendant had not been charged or convicted with such a limited offense, and that the record did not show that the noise emitted was "loud or raucous." Further, he pointed out that the State Supreme Court in its decision had not so limited the offense. On this basis, Justice Black concluded that the ordinance constituted an absolute prohibition and fell within the dictates of *Saia.* In a separate opinion Justice Rutledge stated that, aside from questions of free speech, the ordinance, as indicated by the differing interpretations of the Supreme Court, should be invalidated as too vague to constitute due process.

We believe that the *Saia* and *Kovacs* decisions are, in essence, reconcilable, and indicate two essential propositions. The first of these, implicit in *Saia,* recognizes that the use of a sound truck as an effective means of human communication falls within the constitutional guarantee of freedom of speech.

The second position, intimated in *Saia* and made explicit in *Kovacs*, specifies that this means of communication may be controlled by state and local governments to "prohibit acts or things reasonably thought to bring evil or harm to its people." (P.83.) There Justice Reed stated the ordinance "is an exercise of the authority granted to the city by New Jersey 'to prevent disturbing noises,' N.J.Stat. Ann., tit. 40, § 48-1(8), nuisances well within the municipality's power to control. The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community." (P. 83.) As one commentator on *Kovacs* concluded: ". . . the *Kovacs* decision, while displaying internal confusion, has left the fundamental rights of sound truck use essentially unchanged: municipalities may impose reasonable regulations as to place, time, and volume, but still may not absolutely ban sound trucks nor subject them without adequate standards, to previous restraints that may allow possible censorship." (62 Harv. L. Rev. 1228, 1229; see also 47 Mich. L. Rev. 1007; 14 Mo. L. Rev. 194; 2 U.C.L.A. L. Rev. 561; 34 Cornell L.Q. 626; but see 22 So.Cal.L. Rev. 416; 97 U. Pa. L. Rev. 730.)[7]

Our decision in *Haggerty* v. *Associated Farmers of Calif.* (1955) 44 Cal.2d 60 [279 P.2d 734], followed the lines marked out in *Saia* and *Kovacs*. There we held that the ordinance fell within the proper exercise of the police power to protect the public from the specific abuse of the loud speaker; the ordinance "makes unlawful the emission or transmission of 'any loud and raucous noise upon or from any public highway or public thoroughfare or from any aircraft of any kind whatsoever.' " (P. 62.) The enactment carefully defines raucous noise in order to prevent the "aural aggression" to which Justice Frankfurter alluded in *Kovacs*. Our opinion quotes the following statement in *Kovacs*: "We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities." (P. 67.) The court concludes, "The county, in the exercise of the police power of the state, has a legitimate interest in the

---

[7]Two decisions have sustained absolute prohibitions of sound trucks since the decision in *Kovacs*. (*Brinkman* v. *City of Gainesville* (1951) 83 Ga.App. 508 [64 S.E.2d 344]; *State* ex rel. *Nicholas* v. *Headley* (1950, Fla.) 48 So.2d 80.) Both of these decisions, however, ignore the *Saia* decision.

preservation of the safety and tranquility of its citizens. It cannot be said that the present ordinance is not reasonably directed to that end.'' (P. 70.)

■■ The rule of these cases that the sound truck falls within the constitutional protection of free speech and that it is subject to the specific regulation of its ill effects rests upon the realities of the modern role of such trucks and the necessity for reasonable curtailment of the excessive use of their sound mechanism.

In certain instances the sound truck may be the only practical means for communication of opinion; alternative modes of communication, such as radio or television, may be prohibitively expensive, not available, or not effective. ■■ In the instant case the union seeks to inform the public at the job site of its disagreement with the employer. An exposition of the union's position in a dispute may in certain cases be best conveyed by a prepared communication, carefully scrutinized, rather than by the extemporaneous and often inarticulate utterances of a picket. The loss of the loud speaker thus becomes a curtailment of the recognized right of the union to publicize effectively its cause at the job site. (See *McKay* v. *Retail Auto. S. L. Union No.* 1067 (1940) 16 Cal.2d 311 [106 P.2d 373]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093].)

■ The right of free speech necessarily embodies the means used for its dissemination because the right is worthless in the absence of a meaningful method of its expression. To take the position that the right of free speech consists merely of the right to be free from censorship of the content rather than any protection of the means used, would, if carried to its logical conclusion, eliminate the right entirely. ■■ The right to speak freely must encompass inherently the right to communicate. The right to speak one's views aloud, restricted by the ban that prevented anyone from listening, would frame a hollow right. Rather, freedom of speech entails communication; it contemplates effective communication.

■ On the other hand the selection of the means of communication and the use of such means is not limitless. The municipality may issue reasonable and necessary regulations as to such matters. But the right to regulate does not necessarily sanction the outright prohibition. ■ The municipality cannot justify the prohibition of sound trucks upon the ground that the municipality cannot otherwise avoid loud and raucous noise. ■ The municipality in the proper ex-

ercise of its police power may prescribe volume limitations. Thus the proper test of regulation by a municipality in this area turns upon whether the regulation is a reasonable and necessary one. A measure unnecessary for police purposes should not serve as the justification for an abridgement of the fundamental freedom of free speech.

We therefore turn to the second question which we proposed above: whether the city has exceeded the permissible range of regulation so as to impinge on constitutionally guaranteed rights. We must determine whether section 4430.3[8] is a necessary regulation governing the use of this means of communication.

Section 4430.3 primarily aims to control traffic. The provision is drawn from a model ordinance recommended by the National Institute of Municipal Law Officers in their Report No. 123 (1948) entitled, "Municipal Control of Noise—Sound Trucks—Sound Advertising Aircraft—Unnecessary Noises—Model Annotated Ordinances." The report partly sets out the basis for the provision requiring sound trucks to be ambulatory. "This suggested regulation is designed to prevent the operator of a sound truck from blaring forth his message continuously from one spot as it is generally conceded that continuous noise is more than likely to result in injury to nerves, health, annoyance, disturbance and nuisance. . . . Also, and primarily, if the truck keeps moving, it will not cause crowds to collect about it with the usual attendant traffic congestion and resultant hazards. . . . The requirement of a speed of at least ten miles per hour for sound trucks prevents intentional traffic congestion as well as the evils already referred to. It seems well established that more people will be killed or injured where streets are crowded by pedestrians and motorists with some, or both, wanting to move on and some wanting to listen to the sound truck. If the sound truck keeps moving pedestrians cannot crowd around it and get hit by passing cars. . . ."

Although the ordinance thus proposes to prevent traffic congestion by the requirement that the sound trucks keep moving, its inevitable result must virtually prohibit the effective use of the truck for any complete message or communication. Its mechanized voice must necessarily be restricted to a short blurb, as the truck, with controlled volume,

[8]See footnote 1, *supra.*

rolls past. Any address of sustained reason becomes impossible.

Section 4430.3 covers a larger area than the excision of the evils to which it was directed. Its reach is not limited to the prohibition of a sound truck which impedes the flow of pedestrian and vehicular traffic or which creates a dangerous traffic situation. Rather it sets up a blanket prohibition against the use of a stationary sound truck. The provision fails because, assuming its valid police purpose, it proceeds beyond that which is necessary. Because of its breadth it restrains both improper and proper communication; it exceeds its justification.

To the extent that section 4430.3 seeks to prevent prolonged distraction and annoyance by operation of the truck in one spot, the identical purpose is achieved by section 4430.7.[9] That section imposes volume limitation and requires that the sound be so controlled that it will not be "disturbing or a nuisance to persons within the area of audibility."

Nor is the prohibition of the stationary sound truck necessary for the prevention of traffic hazards. Assuming for the purpose of determining this issue that the ordinance sets up proper standards for the action of the chief of police, the ordinance contains another provision to prevent this undesired consequence. The chief "shall not" issue a license if he finds the sound truck "would constitute a detriment to traffic safety." (§ 4412.2)

The Supreme Court of the United States has recently reiterated the principle that an unnecessarily wide embrace of a statute, entailing the curtailment of constitutional freedoms, cannot be justified by the sanctity of its purposes. Thus in *Shelton* v. *Tucker* (1960) 364 U.S. 479 [81 S.Ct. 247, 5 L.Ed.2d 231], the Supreme Court declared unconstitutional an Arkansas statute requiring every teacher as a condition of employment in a state-supported school or college, to file annually an affidavit listing without limitation every organization to which he had belonged or regularly contributed in the preceding five years. In describing the impropriety of exceeding the bounds of legitimate inquiry, Justice Stewart said, "In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that

---

[9]See footnote 2, *supra.*

broadly stifle fundamental personal liberties *when the end can be more narrowly achieved. The breadth of the legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose."* (P. 488; italics added.)

Justice Stewart set out a number of prior decisions which illustrate this approach. These cases are relevant to the present case. "In *Lovell* v. *Griffin,* 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949], the Court invalidated an ordinance prohibiting all distribution of literature at any time or place in Griffin, Georgia, without a license, pointing out that so broad an interference was unnecessary to accomplish legitimate municipal aims. In *Schneider* v. *State,* 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155], the Court dealt with ordinances of four different municipalities which either banned or imposed prior restraints upon the distribution of handbills. In holding the ordinances invalid, the Court noted that where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but may be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions.' 308 U.S., at 161. In *Cantwell* v. *Connecticut,* 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352], the Court said that '[c]onduct remains subject to regulation for the protection of society,' but pointed out that in each case 'the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom.' 310 U.S. at 304." (See also: *Cramp* v. *Board of Public Instruction* (1961) 368 U.S. 278 [82 S.Ct. 275, 7 L.Ed.2d 285]; *Louisiana* ex rel. *Gremillion* v. *National Assn. for Advancement of Colored People* (1961) 366 U.S. 293 [81 S.Ct. 1333, 6 L.Ed.2d 301]; *Smith* v. *California* (1959) 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205]; *Winters* v. *New York* (1948) 333 U.S. 507 [68 S.Ct. 665, 92 L.Ed. 840]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093].)

In the instant case the obstruction to the use of the sound truck to convey a complete message is absolute. As we have pointed out, this prohibition of the use of the stationary sound truck is not necessary in order to avoid traffic hazards because the ordinance provides other means for so doing. Nor

does the ordinance specifically direct itself to the elimination of loud and raucous noise; instead, it prohibits the dissemination of an address by means of the truck which is *not* loud or raucous. The regulation, which narrows down to loud and raucous, upheld in *Haggerty*, embraces all sounds here. The volume of sound which could properly be prohibited in the narrow channel of loud and raucous is no narrow channel here. It is the volume of sound which, like water, may be distributed over wide lands, shallow in depth and slight in impact.

In summary, the vice of the present ordinance lies in its practical prohibition of the conveyance of a message to the public. The ordinance prevents any continuous statement, argument, or sustained presentation of a point of view that cannot be transmitted during the truck's fleeting, momentary passage. Yet the purposes of the ordinance could have been achieved without such an incursion into the field of free speech. An ordinance narrowly drawn may properly reach to the evils which it seeks to avoid. Instead, here, the ordinance sweeps within its broad ambit the constitutional right to tell a whole story by means of this method of communication.

For this reason, we hold that section 4430.3 of the Ordinance Code of the City of Palm Springs is unconstitutional. The judgment is affirmed.

Gibson, C. J., Traynor, J., Peters, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Shepard, and concurred in by Mr. Presiding Justice Griffin and Mr. Justice Coughlin, in the opinion prepared for the District Court of Appeal in *Wollam* v. *City of Palm Springs* (Cal.App.) 24 Cal.Rptr. 142.

The principal question here involved is the constitutionality of section 4430.3 of article 443 of Ordinance No. 395 enacted by the City Council of Palm Springs. A majority of this court holds that the above mentioned section is unconstitutional because it abridges the freedom of speech guaranteed by the First Amendment to the United States Constitution, made applicable to the states through the due process clause of the Fourteenth Amendment.

Section 4430.3 of the ordinance provides that sound amplifying equipment shall not be operated unless the truck upon

which it is mounted is operated at a speed of at least ten miles an hour except when the truck is stopped because of traffic conditions.

As set forth in the majority opinion, the ordinance was based upon a model recommended by the National Institute of Municipal Law Officers. That body, in its report, stated that the reason for the regulation was to prevent the operator of a sound truck from blaring forth a message from one spot because continuous noise was more likely to result in injury to nerves, health, disturbances and nuisances, as well as to cause traffic congestion with resulting injuries and fatalities.

It is obvious from the wording of the report that traffic control was not the only reason for the model ordinance. A stationary truck blaring forth its message is very much of a traffic hazard because of the natural inclination of motorists to look for the source of the sound and away from preceding or oncoming traffic. It is also a problem insofar as pedestrians are concerned because of the natural curiosity of idle persons to gather and obstruct public sidewalks and streets.

In considering the constitutional validity of the ordinance, I agree with the rule set forth by Mr. Chief Justice Gibson, speaking for a majority of this court in *In re Petersen,* 51 Cal.2d 177, 182 [7] [331 P.2d 24], that "Ordinances are presumed to be valid, and no provision of the challenged ordinance may be condemned as an improper exercise of the police power *if any rational ground exists for its enactment. (Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 348 [79 P.2d 1080] ; *Parker* v. *Colburn,* 196 Cal. 169, 178 [236 P. 921].)" (Italics added.) (*Corning Hospital Dist.* v. *Superior Court,* 57 Cal. 2d 488, 496 [9] [20 Cal.Rptr. 621, 370 P.2d 325] ; *Dittus* v. *Cranston,* 53 Cal.2d 284, 286 [1] [1 Cal.Rptr. 327, 347 P.2d 671] ; *Johnson* v. *Superior Court,* 50 Cal.2d 693, 696 [1], 699 [7] [329 P.2d 5] ; *Lundberg* v. *County of Alameda,* 46 Cal. 2d 644, 652 [10] [298 P.2d 1] ; *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 636 [1] [91 P.2d 577].)

Cities and counties everywhere are seeking a solution to the difficult problem of regulating sound trucks so as not to unreasonably interfere with freedom of speech and at the same time safeguard others in the enjoyment of their private property and the public highways.

Our court, in upholding a county antinoise ordinance in *Haggerty* v. *Associated Farmers of Cal.,* 44 Cal.2d 60, 70 [2] [279 P.2d 734], said : "The county, in the exercise of the

police power of the state, has a legitimate interest in the preservation of the safety and tranquility of its citizens. It cannot be said that the present ordinance is not reasonably directed to that end."

The leading United States Supreme Court cases are *Saia* v. *New York* (1948) 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], and *Kovacs* v. *Cooper* (1949) 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608]. In *Saia,* the court held unconstitutional a city ordinance which forbade the use of loud speakers in public places without first obtaining a permit from the chief of police. The ordinance was held to abridge the guarantee of freedom of speech, not because it forbade oral expression of views via loud speaker, but because it established a prior restraint, without any standards prescribed for the exercise of discretion by the chief of police. Such prior restraint, the court held, might have passed the tests of constitutionality had the ordinance been "narrowly drawn to regulate the hours and places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted." (P. 560.)

In *Kovacs,* an ordinance which forbade the use or operation on the public streets of a sound truck, or of any instrument emitting loud and raucous noises attached to a vehicle, on public streets was held not to infringe the right of free speech. Mr. Justice Reed, who announced the judgment of the court, said: "The use of sound trucks and other peripatetic or stationary broadcasting devices for advertising, for religious exercises and for discussion of issues or controversies has brought forth numerous municipal ordinances. The avowed and obvious purpose of these ordinances is to prohibit or minimize such sounds on or near the streets since some citizens find the noise objectionable and to some degree an interference with the business or social activities in which they are engaged or the quiet that they would like to enjoy. A satisfactory adjustment of the conflicting interests is difficult as those who desire to broadcast can hardly acquiesce in a requirement to modulate their sounds to a pitch that would not rise above other street noises nor would they deem a restriction to sparsely used localities or to hours after work and before sleep—say 6 to 9 p.m.—sufficient for the exercise of their claimed privilege. . . . *Unrestrained use throughout a municipality of all sound amplifying devices would be intolerable.*" (336 U.S. at p. 81.) (Italics added.)

The opinion continued, at page 87: "City streets are rec-

ognized as a normal place for the exchange of ideas by speech or paper. But this does not mean the freedom is beyond all control. We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities. On the business streets of cities . . . such distractions would be dangerous to traffic at all hours useful for the dissemination of information, and in the residential thoroughfares the quiet and tranquility so desirable for city dwellers would likewise be at the mercy of advocates of particular religious, social or political persuasions. We cannot believe that rights of free speech compel a muncipality to allow such mechanical voice amplification on any of its streets.''

Further, the court said in *Kovacs*: ''All regulatory enactments are prohibitory so far as their restrictions are concerned, and the prohibition of this ordinance as to a use of streets is merely regulatory. Sound trucks may be utilized in places such as parks or other open spaces off the streets. The constitutionality of the challenged ordinance as violative of appellant's right of free speech does not depend upon so narrow an issue as to whether its provisions are cast in the words of prohibition or regulation. The question is whether or not there is a real abridgment of the rights of free speech.

''Of course, even the fundamental rights of the Bill of Rights are not absolute. The *Saia* case recognized that in this field by stating 'The hours and place of public discussion can be controlled.' '' (Pp. 85-86.)

The use of the two words ''hours'' and ''places'' implies that there may be an absolute prohibition at certain hours and at certain *places*. It does not mean that there must be permissible hours at every place.

The Palm Springs ordinance follows precisely the guide set forth in the *Saia* case. It is narrowly drawn to regulate the hours of use, the volume of sound, and the places of use. It does not permit any official, or official body, to control the use of loud speaking equipment in his, or its, uncontrolled discretion, and, therefore, it avoids the infirmity of the ordinance involved in the *Saia* case which, according to Mr. Justice Douglas, because it was not so narrowly drawn, sanctioned a ''device for suppression of free communication of ideas.''

In *Commonwealth* v. *Geuss*, 168 Pa. Super. 22 [76 A.2d 500], affirmed 368 Pa. 290 [81 A.2d 553], an ordinance was upheld that entirely prohibited the use of sound amplifying

devices on the busiest streets of Allentown, Pennyslvania. The United States Supreme Court dismissed the appeal for lack of a substantial federal question (342 U.S. 912), citing *Kovacs* v. *Cooper, supra.*

The Pennsylvania court, in addition to pointing out that the ordinance was valid as a safety measure, stated: "There is no absolute right of free speech with sound trucks or other amplifying devices on city streets, as urged upon us by appellants. The right is subject to curtailment on 'busy streets in the business area.'

"If we were to uphold the contention of appellants it would be tantamount to ruling that a sound truck or other amplifying device may be added to each individual's right of freedom of speech. The result would indeed be intolerable. It is daily becoming more difficult for a person to concentrate on his work in a downtown office building because of the noises apparently necessary and incidental to the conduct of affairs in the life of a modern city. And if the councilmanic bodies of the municipalities are not to be permitted to prohibit the operation of sound trucks and the blare of this ultramodern means of communication on certain streets or in certain areas, then there will no longer be any authority lodged anywhere to safeguard . . . 'the steadily narrowing opportunities for serenity and reflection'; and we may add 'the steadily narrowing opportunities' to keep the streets open and available for safe movement of people and property, the primary purpose to which streets are dedicated. [Citation.]" (76 A.2d at pp. 503-504.)

The Pennsylvania court then quoted the New Jersey Supreme Court when the *Kovacs* case was before it: " 'The freedom to express one's opinions and to invite others to assemble to hear those opinions does not contain the right to compel others to listen. The means of expression through a sound amplifier is tantamount to compulsion. The booming voice of a speaker in crowded thoroughfares of the city forcibly attracts the attention of almost all within a wide area. That alleged right was never intended to be guaranteed by either [United States or New Jersey] Constitution,' nor, may we add, by the Constitution of Pennsylvania." (76 A.2d at p. 504.)

The majority of our court states that the city's requirement to keep sound trucks moving is unnecessary as a safety measure because another section of the ordinance provides that the police department shall not issue a license if it finds that the

sound truck would be a detriment to traffic safety, but, as has been pointed out above, traffic safety is not the only area in which police power may be exercised. In *Kovacs,* the United States Supreme Court said: "The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community." (336 U.S. at p. 83.)

The majority concludes that "the vice of the present ordinance lies in its practical prohibition of the conveyance of a message to the public," and ". . . the ordinance sweeps within its broad ambit the constitutional right to tell a whole story by means of this method of communication."

Mr. Justice Peters, in a recent unanimous opinion of this court, *American Civil Liberties Union* v. *Board of Education, ante,* pp. 203, 220 [28 Cal.Rptr. 700, 378 P.2d 980] said: "In the final analysis, the determination that a particular statute is or is not too broad in the constitutional sense turns not so much on its language as upon its effect. A statute may be phrased in words that are 'broad,' in that they convey general rather than specific concepts, and yet be the means of stating a regulation that is narrow and limited in its application. (See for example the two ordinances involved in *Saia* v. *New York,* 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], and *Kovacs* v. *Cooper,* 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608].)"

The effect of the ordinance may be to prohibit plaintiff from conveying a sustained message, but the ordinance is not the sole cause thereof. The same effect may occur in a variety of ways, e.g., a motorist or pedestrian passing a stationary truck would also receive an incomplete message; and even a willing listener cannot be compelled to hear a message from beginning to end. Furthermore, the mere belief as to the precise way in which plaintiff's speech will bring about the best results does not justify invalidating the ordinance. "Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved." (*Breard* v. *Alexandria,* 341 U.S. 622, 642 [71 S.Ct. 920, 95 L.Ed. 1233, 35 A.L.R.2d 335].)

The effect sought by plaintiff, i.e., a guarantee that a complete message be conveyed, can only be achieved if it is granted an exclusive permit. If others are permitted the same freedom at the same time and place, each sound truck

will necessarily interfere with the other so that none of the messages will be coherent, and the clamor from several megaphones will be unbearable.

The majority of this court overlooks the crucial fact that when plaintiff asserts a right to remain parked at the curb at the site of the trade dispute, it is not claiming or making a public use of the street in common with all other members of the public, but is claiming an absolute and exclusionary right to appropriate a particular segment of the street for its private and exclusive use.

It is fundamental that the basic right of free speech guaranteed by the Constitution belongs equally to everyone, and the effect, if the majority opinion is followed to its logical conclusion, is that confusion and disorder would prevail on the streets of Palm Springs. The striking employees could park their sound truck in front of their employer's place of business and proceed to blast forth their message in loud tones, while the employer could park a sound truck of his own in front of his place of business and blast forth his message in equally loud tones, with the result that a chaotic condition would be created which the innocent citizens and peace officers would be powerless to alleviate. Such a condition in a civilized state would be intolerable.

That such a situation was never intended to be sanctioned by the guarantee of free speech was pronounced in *Cantwell* v. *Connecticut*, 310 U.S. 296, 308 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352] : "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious."

Since the ordinance in the present case bears a substantial relation to the health, safety and general welfare of the public as a whole and is not arbitrary, unreasonable or capricious, thus constituting a denial of due process under the Fourteenth Amendment to the United States Constitution, it is a valid exercise of the police power of the city, and it does not unreasonably interfere with plaintiff's right of free speech. Freedom of speech on the public streets is not prohibited; it is only the amplification of such speech by the means of stationary sound trucks at which the ordinance is aimed.

As Mr. Justice Shepard said in his opinion for the District Court of Appeal: "The exercise of any human right or privilege always recognizes the reasonable protection of the exercise of the same right in others and the welfare, health

and happiness of all. . . . We would be naive indeed if we ignored the common knowledge that loud speakers of sound trucks used on public streets have as their primary purpose the overriding of all ordinary traffic noise and sidewalk conversation so that the sound truck message will, by *force* of sound volume, demand attention." (*Wollam* v. *City of Palm Springs, supra* (Cal.App.) 24 Cal.Rptr. 142, 144-145.)

For each and all the reasons enunciated above, I would sustain the ordinance in its entirety.

Schauer, J., concurred.