JUAN MARI BRAS ET AL., Plaintiffs and Appellants, *v.* JUAN F. CASAÑAS, ETC., Defendant and Appellee.

Nos. AP-66-44,         Decided May 10, 1968.
AP-66-45.

*Enrique González* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Ida Cardona Hernández, Assistant Solicitor General,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Five days prior to the general elections of 1964, on October 29, the Commonwealth Board of Elections approved several rules[1] to provide for the closing of political propaganda places in the vicinity of polling places, to prohibit political activity in such vicinities, and to prohibit the use of loudspeakers during election day,[2] with the following text:

---

[1] Section 12 of the Election Law, 16 L.P.R.A. § 13, expressly authorizes the Commonwealth Board of Elections to approve rules and regulations for the supervision and direction of the elections; § 97(a), 16 L.P.R.A. § 285, establishes that the violation of any rule or regulation legally adopted shall be considered a misdemeanor, punishable by a fine of not less than one hundred dollars nor more than five hundred dollars, or imprisonment of not less than one month nor more than six months, or both penalties.

[2] In a declaration of policy which precedes the rules, reference is made to the fact that "the elections shall be free and equal"; that "there exists the possibility that in the immediate vicinity of polling places, centers of political propaganda may exist" which "may cause disorders and may provoke discussions which might degenerate in breach of the public peace"; and to the duty of the Board to see that "the elections be conducted in the

"1—It is hereby prohibited to engage in political propaganda [on an election day] within a radius of 100 meters from any place where there is established a polling place. . . .

"2—It shall be understood that the preceding prohibition would be violated by the existence, within the indicated radius, of any place open to the public for purposes of propaganda allusive or relative to the elections; any person with posters allusive or relative to the elections; any person who distributes, or any vehicle from which are distributed, pamphlets, handbills, or material of any kind allusive or relative to the elections; *any loudspeaker for the broadcasting of messages allusive or relative to the elections*; or any person who addresses another with a request for the latter's vote in favor of a political candidate or party, or for that person's abstention from voting.

"   .        .        .        .        .        .        .        .

"3—*The use of loudspeakers is strictly prohibited in any part of Puerto Rico on election day.*

"4—.        .        .        .        .        .        .        .

"The Commonwealth Police is hereby authorized to shut down any place which on election day, as herein defined, is used for political propaganda, provided it is located within a radius of 100 meters from a place where there are polling places. Moreover, the Commonwealth Police is hereby authorized to take possession of any vehicle, device, material or apparatus being used or having been used for political propaganda within the aforementioned radius of 100 meters; *and the Police is further authorized to take possession of any loudspeaker used in Puerto Rico on election day*; and, moreover, to arrest any person who violates the provisions of these Rules." (Italics ours.)

Four members of the Pro Independence Movement—nonpartisan political group which advocates the independence of

most peaceful, free, honest, and legal possible manner, and to bring about, likewise, by all available means, that all the voters shall have access to the polling places, without being exposed to threats or provocations, or to propaganda which could turn to coercion preventing the free exercise of the electoral prerogative." Finally it is said that "the use of loudspeakers on election day *may* disturb the atmosphere of peace and tranquillity on which the same should be carried out."

Puerto Rico and which urges electoral abstention[3]—were prosecuted for allegedly having violated Rule 3 concerning the use of loudspeakers.[4] They did not post bail and were imprisoned. They filed motions for habeas corpus challenging the unconstitutionality of Rule Three. After the hearing was held, the trial court denied them. It concluded that the provision challenged constituted a legitimate exercise of the power of the Commonwealth Board of Elections to guarantee the right to universal suffrage and that "the limited restriction to the means of propaganda" which could be utilized did not violate the right to freedom of expression.

[3] On October 26, 1964, three days prior to the adoption of the rules by the Commonwealth Board of Elections, the Secretary of Justice rendered an opinion at the request of the Police Superintendent to the effect that notwithstanding the provisions of §§ 97 and 98(b) of the Electoral Law, 16 L.P.R.A. §§ 284 and 291, the Legislature "did not intend to prohibit the freedom of speech and the freedom of expression in all its forms when utilized to induce a person not to vote which would be inconsistent with the Organic Act of 1917 which was in force until 1952, and with the Constitution of the Commonwealth." He added that "since the citizens are protected by constitutional mandate against any coercion in the exercise of the electoral right [citation] any conduct which may be considered as involving any kind of coercion, threat or intimidation to a voter for the purposes of precluding such person from exercising his right to vote is proscribed." Opinion of the Sec. of Justice No. 40 of 1964, Vol. XXXV, p. 211.

[4] The complaints charge the following acts against petitioners:

against Juan Mari Bras and Juan Ramón Crespo, that they operated a loudspeaker installed in a vehicle, through which they said, "Wake-up Puerto Rican, Wake-up Puerto Rican" and other similar things, the entire text of which according to a stipulation submitted at the hearing of the petition for habeas corpus was "Wake-up Puerto Rican, defend what is yours, defend your country, defend your home; defend your children, your honor, and your language, defend your sky, your land, and your sea. Other islands have already broken their ties conquering their dignity with courage. Puerto Rico is not less than other lands, let us conquer our freedom also. Let us rescue from foreign hands the national captive patrimony; let us not be pariahs in Borinquen any more; it is enough Puerto Rican, it is enough";

against Clemente Mattei Padilla, that he used a loudspeaker to invite the people not to vote and to join the electoral strike;

and against Félix Rivera Otero, that he allowed Clemente Mattei Padilla to use the loudspeaker installed in a vehicle driven by defendant and to address the public exhorting them not to vote.

An appeal was taken. In essence, appellant-petitioners challenge the validity of Rule 3, (a) as unconstitutional on its face because it is an undue and unreasonable restriction to freedom of expression; (b) because it is a too broad prohibition which does not bear a reasonable relation to the right to free suffrage which the Board sought to protect; and (c) because of ·its application to petitioners in a discriminatory manner.

1. It should be previously established that the use of loudspeakers for the dissemination of ideas and concepts is protected by the constitutional right which guarantees the freedom of speech. In effect it is nothing more than the utterance of words mechanically amplified. Not only the technological progress demands that the protected right be limited to the usual and proverbial manners of expression, but the economic needs so demand it, with a view to the control exercised by a limited group over other means of mass communication and that this is a vehicle within reach of those who cannot use the press, radio, and television in an effective manner, because of its cost.[5] On the other hand the right of free speech includes the right to be heard and the use of amplifying devices assures only that the message shall reach a greater number of persons.[6] School of Public Administration, *La Nueva Constitución de Puerto Rico* 211.

---

[5] See Act No. 110 of June 30, 1957, 16 L.P.R.A. §§ 601–609, on the election fund for political parties and the regulation of contributions for electoral purposes.

[6] Notwithstanding the conflicting comments raised right after its decision, the application of the First Amendment to the use of loudspeakers has not been discussed in the federal jurisdiction since *Saia* v. *New York*, 334 U.S. 558 (1948) and *Kovacs* v. *Cooper*, 336 U.S. 77 (1949). See comments in 29 Boston U. L. Rev. 282 (1949); 34 ·Cornell L.Q. 626 (1949); 17 Geo. Wash. L. Rev. 494 (1949); 62 Harv. L. Rev. 1228 (1949); 9 Md. L. Rev. 285 (1948); 10 Md. L. Rev. 355 (1949); 3 Miami L.Q. 51 (1948); 47 Mich. L. Rev. 111 and 1007 (1948); 14 Mo. L. Rev. 194 (1949); 28 Neb. L. Rev. 618 (1949); 24 N.D. Lawyer 420 (1949); 24 N.Y.U.L.

■ 2. The Report of the Bill of Rights Committee of the Constitutional Convention unequivocally sanctions the primacy of the freedom of expression in our constitutional structure when its §§ 3 and 4 describe that "they cover the general scope of the freedom of conscience, thought, expression, and the proper activities to exercise fully, within the greatest freedom the totality of these rights."[7] Known historical considerations support the preeminence of this right, undisputed root of the democratic system of government. Emerson, Haber, and Dorsen, *Development of Freedom of Expression in the United States* in I Political and Civil Rights in the United States 29–71 (1967). Of course, this superior value does not assume an absolute nonrestriction, so that it cannot be subordinated to other interests when the public need and convenience so require. It is precisely this area which we are called upon to delimit in each specific case.[8]

A distinctive characteristic of Rule Three which we consider is the absolute nature of the prohibition: "The use of loudspeakers is *strictly* prohibited *in any part of Puerto Rico on election day.*" (Italics ours.) It conflicts predominantly with the germane regulation on the exercise of political propaganda which is limited to a radius of one hundred meters from any place where a polling place is established

---

Rev. 232 (1949); 3 Okla. L. Rev. 219 (1950); 28 Ore. L. Rev. 54 (1948); 3 Rutgers L. Rev. 250 (1949); 22 So. Cal. L. Rev. 416 (1949); 1 Syracuse L. Rev. 170 (1949); 20 Tenn. L. Rev. 689 (1949); 17 U. Cinc. L. Rev. 400 (1948); 18 U. Cinc. L. Rev. 222 (1949); 2 U. Fla. L. Rev. 103, 257 (1949); 97 U. Pa. L. Rev. 730 (1949); 58 Yale L.J. 335 (1949); 6 Wash. & Lee L. Rev. 74 (1949).

See, also, Annotation, *Public regulation and prohibition of sound amplifiers or loudspeaker broadcasts in streets or other public places*, 10 A.L.R.2d 627 (1950).

[7] 4 Journal of Proceedings of the Constitutional Convention of Puerto Rico 2564 (Equity Publishing Corp., 1961).

[8] For a discussion of the function of the courts on this particular, see Richardson, *Freedom of Expression and the Function of Courts*, 65 Harv. L. Rev. 1 (1951) and Emerson, *Toward a General Theory of the First Amendment*, 72 Yale L.J. 877 (1963).

and which expressly mentions the use of loudspeakers for the broadcasting of messages allusive or relative to the elections. It is sought to ground this restriction on the mere possibility that the use of these mechanical devices disturb the peaceful and tranquil atmosphere in which the elections should be held.

A slight examination of the situation will show that in effect it involves an attempt to silence the expression, not by the selection of the method utilized for the dissemination, but by the message sought to be disseminated. It is far from being a protection against "auditory aggressions"; it is in effect a limitation to the exercise of the freedom of speech, which presupposes the discovery and dissemination of ideas. In this specific case a more effective means to thwart the right of petitioners to political communication cannot be conceived for their exhortation of electoral abstention gains true relevance on the day of the elections. It is precisely consubstantial with the right to freedom of expression to grant the opportunity to the minority to express its views in an *effective manner*.

In a similar situation, the Federal Supreme Court reached identical conclusion in *Mills* v. *Alabama*, 384 U.S. 214 (1966). The question was reduced to determining whether the publication, on election day, of an editorial urging people to vote in a particular way in relation to a certain proposition constituted a crime in view of a statute which proscribed electioneering or soliciting votes for or against any proposition or candidate on election day. Mr. Justice Black said: (at pp. 218–219)

"Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated,

and all such matters relating to political processes. . . . Thus the press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve. Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change, . . . muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free. . . . by providing criminal penalties for publishing editorials such as the one here silences the press at a time when it can be most effective. It is difficult to conceive of a more obvious and flagrant abridgment of the constitutionally guaranteed freedom of the press."

*Cf. Cantwell* v. *Connecticut,* 310 U.S. 296 (1940) ; *Hague* v. *Committee for Industrial Organization,* 307 U.S. 496 (1939) ; and *Lovell* v. *Griffin,* 303 U.S. 444 (1938). See, also, *Wollam* v. *City of Palm Springs,* 379 P.2d 481 (Cal. 1963) and note in 49 Iowa L. Rev. 567 (1964) ; *Mathes* v. *Collyer,* 223 N.Y.S.2d 280 (1961) ; *Cardon* v. *Cromarty,* 221 N.Y.S.2d 924 (1961).

■ The efforts made to present the limitation in the use of loudspeakers as a reasonable restriction collapse in the light of the absolute character of the prohibition.[9] As we have said it is fundamentally sought to limit the expression of ideas since the rule challenged does not make reference to the place or volume of the broadcasts, and as to the one concerning time—on election day—far from supporting its reasonableness, it emphasizes even more its impropriety. We do not agree with the anticipated view that the use of loudspeakers is an activity which inherently bears elements of coercion and interference with the free exercise of suffrage. Certainly at the bottom of this position what is foreseen is

---

[9] Already in *People* v. *Burgos,* 75 P.R.R. 517, 535 (1953), we had said that the laws which in any way limit the constitutional right to freedom of expression should "be strictly construed in order that such limitations may not transcend what is absolutely essential."

*that the message which is transmitted* might be inflammatory or might disturb the casting of the vote,[10] and for that reason it is sought to prohibit any kind of manifestation. Dubious service is rendered to the right to free suffrage sought to be protected if the freedom of expression is restricted to that end; the result of the former would be untranscendent without the guarantee of the latter. It would lose all its meaning; worthless would be its consequences.

■■ We point out finally that the foregoing in no way means that the use of loudspeakers may not be regulated as to time, place, and volume,[11] not only for electoral purposes but for any other lawful purpose. We decide only that the absolute prohibition contained in Rule Three is in conflict with § 4 of Art. II of the Constitution of the Commonwealth of Puerto Rico and is unconstitutional from its own face. Therefore, the petitioners cannot be prosecuted for its violation.

The judgment rendered by the Superior Court, San Juan Part, on May 3, 1966, will be reversed, and the case remanded to said court ordering it to grant the petition for habeas corpus and to cancel the bail bonds posted by petitioners.

---

[10] To meet these eventualities the positive legislation contains sufficient provisions. See, among others, the crimes against public peace contained in §§ 358 to 365, 368 to 371 of the Penal Code, 33 L.P.R.A. §§ 1431 to 1442; the Act to Suppress Unnecessary Noises, No. 71 of April 26, 1940, 33 L.P.R.A. § 1443; §§ 169, 177, and 188 of the Penal Code, 33 L.P.R.A. §§ 560, 568, and 579.

[11] In their brief, appellants accept that the regulation as to time, place, and volume is lawful.