[Civ. No. 793. Fifth Dist. Jan. 31, 1968.]

BENNY MAX PARRISH, Plaintiff and Respondent, v. THE MUNICIPAL COURT FOR THE MODESTO JUDICIAL DISTRICT OF STANISLAUS COUNTY et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Raymond M. Momboisse and Charles G. Warner, Deputy Attorneys General, for Defendants and Appellants.

Albert M. Bendich and Coleman A. Blease for Plaintiff and Respondent.

CONLEY, P. J.—The People appeal from a judgment granting a writ of prohibition which forbids the Municipal Court of the Modesto Judicial District to prosecute Benny Max Parrish any further for the alleged violation of section

602, subdivision (o), of the Penal Code.* That provision of law was enacted by the Legislature to protect public buildings from trespass during closing hours and, incidentally, to preserve the customary routine of caretakers in maintaining them. The subdivision reads as follows:

"Every person who wilfully commits any trespass by either.

" . . . . . . . . . . . . .

"(o) Refusing or failing to leave a public building of a public agency during those hours of the day or night when the building is regularly closed to the public upon being requested to do so by a regularly employed guard, watchman, or custodian of the public agency owning or maintaining the building or property, if the surrounding circumstances are such as to indicate to a reasonable man that such person has no apparent lawful business to pursue; is guilty of a misdemeanor."

While engaged in a general mission, which most citizens would approve, by aiding poor people to realize in timely fashion the benefits of a charitable provision for their welfare, the respondent, Benny Max Parrish, doubtless believing in the correctness of what he did, was accused of violating the above subdivision of the Penal Code. A complaint, later amended, was filed against Mr. Parrish alleging that on or about the 25th day of August, 1966, at and in Modesto Judicial District in Stanislaus County he ". . . wilfully and unlawfully refused and failed to leave a public building or a public agency, to wit, the County of Stanislaus Welfare Department, 1030 Scenic Drive, Modesto, California, during those hours of the day and night when the building was regularly closed to the public upon being requested to do so by the custodian of the public agency owning and maintaining the building in violation of Section 602 (o) of the California Penal Code," and that when he did so the surrounding circumstances were such as to indicate to a reasonable man that he had no apparent lawful business to pursue.

Mr. Parrish went with other interested persons to the Stanislaus County Welfare Department on a week day at about 4:30 in the afternoon to urge immediate help to an impoverished family; at 5 o'clock the building was locked pursuant to customary procedure, but Parrish and other interested per-

---

*In 1967, the Legislature deleted subdivision (n) of section 602 and relettered subdivision (o), subdivision (n). In this opinion, the former subdivision (o) will be used.

sons continued to confer with those in charge of the agency until about 8:30 p.m., at which time he and the others present on the same mission as himself were ordered to leave the building by the proper officials. Everybody eventually did so except Mr. Parrish, who resolved to stand his ground and remain in the building. He was thereupon arrested and was charged, in due course, as above stated, with breach of subdivision (o) of section 602 of the Penal Code.

The date of the filing of the complaint was August 31, 1966. The defendant's demurrer was overruled as to all counts; the district attorney then filed an amended complaint, which carried the additional allegation as provided by the code that the defendant at the time had no apparent lawful business to pursue. Mr. Parrish entered a plea of not guilty to the amended complaint.

On October 17, 1966, the petitioner filed a petition for a writ of prohibition in the Superior Court of Stanislaus County, including a prayer for declaratory relief and a request for a stay of trial proceedings in the municipal court. The superior court issued an alternative writ of prohibition staying the municipal court jury trial which had been set for November 9, 1966, while the hearing on the writ was pending; the district attorney filed a demurrer to the petition together with a memorandum of points and authorities. After the hearing, the superior court issued a permanent writ of prohibition on February 1, 1967, permanently staying all further trial proceedings in the municipal court. The People filed a timely notice of appeal to this court on February 6, 1967.

In a memorandum containing an extended treatment of the question before him, the trial judge stated that the petitioner, Benny Max Parrish, since May of 1966, had been a field supervisor for the California Center for Community Development and that the organization in turn was a nonprofit California corporation supported by the Office of Economic Opportunity. Petitioner's employer aimed to develop and administer community action programs for the poor, including help to indigent or impoverished people to aid them in applying for assistance pursuant to Public Law 88-452 of the Economic Opportunity Act of 1964; in pursuance of such employment, petitioner engaged in self-help projects for the poor in Stanislaus County, one of his activities being the insistence that specific indigent people should avail themselves of economic help furnished by the government; as one of the persons selected to help the poor, he, with members of a Wel-

fare Rights Organization, went to the Stanislaus County Welfare Department in Modesto to protest the apparent county policy of denial of aid to some, at least, who were presumptively eligible f. r it, and to seek immediate financial help for a destitute family.

Once before this occasion, on June 30, he had gone to the welfare department under similar circumstances and had persisted in demanding payment of an immediate nature for the people then involved. On this former occasion, the petitioner and other citizens with him did leave the building without demand after the welfare director had agreed in a late session after 5 o'clock to give immediate aid on the following morning.

On August 25, 1966, from about 4:30 in the afternoon, he and others conferred with the assistant director of the welfare department; they continued their session in the building until about 8:30 p.m. but did not secure a promise in this instance for the advancement of aid on the following day. The watchman assigned to the building, the District Attorney of Stanislaus County, the Acting Chief of Police of Modesto, and the County Administrator of Stanislaus County at that time demanded that petitioner and the other members of the Welfare Rights Organization leave the building, and told them that if they did not do so they would be arrested pursuant to section 602, subdivision (o), of the Penal Code. Petitioner and one other member elected to stay unless they were promised a welfare payment to the eligible family the next morning. The department officials refused to make such an agreement and petitioner again refused to leave the building. He was then arrested, and, as above stated, was subsequently charged with violation of section 602, subdivision (o), of the Penal Code.

In his 32-page memorandum of opinion, the trial court covered the issues involved in the litigation in a detailed manner and in the process decided most of the questions involved in favor of the People; he determined that section 602, subdivision (o), of the Penal Code applied to civil protests involving free speech, assembly, and a petition for redress of grievances; that the welfare department building of Stanislaus County is ''a public building'' as the term is used in section 602, subdivision (o), of the Penal Code; that petitioner was asked to leave the building by a regularly employed custodian of the public agency maintaining the property; that the building had been properly and regularly closed to the public for the day; that the petitioner did not have apparent lawful

business to pursue and, therefore, was not entitled to remain in the building after being requested to leave; that the code section in question was not unconstitutionally vague on its face; that the pending trial or threat of future prosecution for similar conduct did not violate petitioner's right to exercise protected First Amendment freedoms in the future.

■ As all of these findings, which we approve, were adverse to the petitioner, it is not possible for us to apprehend sufficient justification for the trial court's answer to the question posed under paragraph IX of the memorandum opinion: "(Finally, Does California Penal Code Section 602 (o), If Applied to Petitioner's Conduct Under All Of The Circumstances, Entrench Upon Activity Protected By The First Amendment To The Constitution Of The United States? .... Yes)"

Apparently, the decision of the court was based, in part at least, upon the fact that once before, as above mentioned, the petitioner insisted on remaining in the welfare building until a promise was made for relief the next morning and that this gave Parrish, as a reasonable man, the right to do the same thing again; the memorandum indicates that the trial judge believes that the contrary position of the public officials in insisting that the petitioner leave the building after closing time in view of his previous experience constituted a "trap for the unwary." We do not agree with this apparent conclusion on the part of the trial court, but, on the contrary, adhere to the view that the law is properly enforceable for the protection of the county's buildings and the orderly carrying out of public business.

The fact that the appropriate officials of the county did not see fit to request Mr. Parrish to leave the building on the prior occasion and then to insist upon a penalty for his failure to accede, at least arguably, gave no right to Mr. Parrish to repeat his actions and to fail to comply with the law made for the protection of public buildings. It is somewhat as if a man were to say, "I drove my car in excess of the speed limit at 75 miles an hour once before and nothing happened, so I can do it as often as I please."

■ The Attorney General's brief expounds the view that the trial judge applied a subjective standard to the requirement that surrounding circumstances be such as to indicate to a reasonable man that the person violating the rule had no apparent lawful business to pursue, rather than an objective standard. The petitioner's counsel sees no such circumstance.

In any event, we have no hesitation in saying that it is an objective standard that the law lays down. An individual is not permitted to conclude that what he is doing is necessarily reasonable and thus constitutes a defense to the charge. On the contrary, the standard is objective just as the "reasonable man" whose theoretical actions are the test of due care in a tort action is an objective "reasonable man."

The case of *In re Bacon*, 240 Cal.App.2d 34, 46-48 [49 Cal. Rptr. 322], makes it clear that the test is objective rather than subjective. The persons convicted in that case had participated in the "free speech sit-in" in Sproul Hall at the University of California, and they contended that they did not violate the statute because, in their own opinion, they had "lawful business" to pursue. In rejecting appellants' contention, the court stated: "Assuming *arguendo* that entering Sproul Hall while it was regularly open to the public for the purpose of expressing to the administration certain grievances with university rules was a lawful business, we are of the opinion that that business ceased when the building became regularly closed and those persons to whom the grievances were addressed were entitled to cease their active school duties and responsibilities for the day. *The circumstances in the instant case are not such as to indicate to a reasonable man that administrators of the university were required to keep Sproul Hall open beyond the regular 7 p.m. closing time in order that the stated grievances might be expressed in the manner chosen by the protesters."* (Italics added.) That Mr. Parrish thought he had lawful business to pursue in the circumstances of the case did not necessarily meet the standard. The question was whether or not a reasonable man would think, under the facts presented at that time, that he had a right, as Mr. Parrish apparently thought he did, to remain in the building although it was long past closing time and there was no one assigned to listen any more that night to his complaints, or his purported solution of the difficulties of the poor family he was representing. It might be asked what good it would have done for him to sit all night in a presumably darkened building with no one to listen to his demands or suggestions, or to help him devise a way out of those difficulties? A reasonable man in those circumstances, at least questionably, would not have insisted on staying in the circumstances that then presented themselves. It was requisite, it seems to us, for a jury to consider whether or not he acted as a reasonable man in the circumstances, and it was not the

right of the judge to take the question from the jury and decide it himself.

The use of the concept of freedom of speech is not wisely injected. It must be implemented with common sense. No one would advocate the right to interfere in the midst of church services by a speech on some other subject or even on the text being treated liturgically. To cite another extreme example, a political speaker cannot properly be interrupted by a person who seeks to exercise his ''right of free speech'' by talking about the scenery or any other subject at odds with what is being said from the platform.

Common sense must be adhered to in the exercise of constitutional rights, and the old saying is applicable, ''There is a time and place for everything.''

In *Adderley* v. *Florida*, 385 U.S. 39 [17 L.Ed.2d 149, 87 S.Ct. 242], the defendants were convicted of trespass in protesting previous arrests at a county jail, thereby blocking passage of cars over the jail driveway at a place not generally used by the public for holding meetings; they remained there notwithstanding the requests of the sheriff and the jail custodian to the contrary; the defendants said that the arrest deprived them of their constitutional rights to freedom of speech, press, assembly, and petition, but the United States Supreme Court affirmed the conviction, stating at page 47: [17 L.Ed.2d at p. 156]:

''The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, . . .''

The writ of prohibition granted by the trial court must be set aside, and Mr. Parrish subjected to a trial of the crime complained of against him. He may urge any legitimate defense which he has and the judgment of the jury should result in finding him guilty or not guilty. If he is found guilty, the trial judge would undoubtedly moderate the weight of the sentence in accordance with all the elements proven by the evidence. The fact that Mr. Parrish, at the time of his alleged misdemeanor, was doing what he thought was a good deed for the benefit of a needy family did not completely excuse a breach of the law by him, if any. However, if he should be found guilty, the trial judge does have legal authority in sentencing him ''to temper the wind to the shorn lamb.''

The judgment is reversed. The trial judge is directed forthwith to set aside the writ of prohibition, and to enter an order denying prohibition and setting aside the temporary restraining order heretofore directed to the municipal court.

Stone, J., and Gargano, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 28, 1968.