[Civ. No. 24122.   First Dist., Div. One.   Mar. 14, 1968.]

ADELINE DI LORENZO, Plaintiff and Appellant, v. CITY OF PACIFIC GROVE, Defendant and Respondent.

Thompson & Thompson and David M. Hollingsworth for Plaintiff and Appellant.

Henry I. Jorgensen, City Attorney, for Defendant and Respondent.

ELKINGTON, J.—Plaintiff Adeline Di Lorenzo commenced an action seeking to enjoin the enforcement of an ordinance of defendant City of Pacific Grove. From a judgment for defendant city, entered after an order sustaining a demurrer without leave to amend, plaintiff appeals.

The question before us is whether the publisher of a newspaper has a constitutional right, by virtue of the First and Fourteenth Amendments, to place a newspaper on the premises of a private residence without the consent of the resident, where a city council has determined by ordinance that such activity constitutes a threat to public safety.

The ordinance in question is numbered 534 N.S. In its pertinent parts it states the following:

"1. The Council of the City of Pacific Grove does hereby find and determine that the practice of throwing newspapers and other advertising media on private residential property creates a serious police problem and a threat to the public safety in that residents are unaware that such material is going to be thrown on their premises and are unable to make proper provisions for the stopping of such throwing of material on their property so that their absence may be inadvertently advertised to persons of dissolute or criminal propensities as a result of the accumulation of advertising matter, handbills, and old newspapers on their property, therefore:

"2. The following section of the Pacific Grove Municipal Code is amended to read as follows:

"7.20.010. Regulation of the Distribution of Newspapers and other Advertising Media to Residential Property. It shall be unlawful for any person, firm, or corporation, or any agent or employee of any person, firm or corporation to throw into, leave upon, or scatter onto any residential property in the City of Pacific Grove without the consent of the owner thereof or his agent, or the occupant of said private property any newspaper, handbill, pamphlet, circular, dodger, or any advertising sheet or matter devised or intended to promote any commercial or money-making activity."

Among other things, plaintiff alleges in her complaint that she was and is the owner and publisher of "The Pacific Grove Times," a newspaper published and distributed in Monterey County; that defendant city has prevented her, by arrest and threat of further arrests, from delivering or distributing her newspaper in private places in the City of Pacific Grove without the prior consent of the owners of such private places.

It will be noted that Ordinance 534 N.S. makes it unlawful "to throw into, leave upon, or scatter onto any residential property" without consent of the owner or occupant thereof, any newspaper. It does not prevent one from going upon residential property for the purpose of leaving a newspaper with an occupant who accepts it. Nor does it prohibit going upon such property to solicit consent to place newspapers on the premises in the future. However, the ordinance is calculated to eliminate the threat to the security of one's home caused by an uninvited accumulation of paper at the front door— thus notifying potential intruders of the householder's absence. It appears to be "narrowly drawn" reaching only the special evil which the ordinance announces it seeks to eliminate.

Plaintiff relies principally upon *Wollam* v. *City of Palm Springs,* 59 Cal.2d 276 [29 Cal.Rptr. 1, 379 P.2d 481]. She quotes the following language (p. 284): "The right of free speech necessarily embodies the means used for its dissemination because the right is worthless in the absence of a meaningful method of its expression. To take the position that the right of free speech consists merely of the right to be free from censorship of the content rather than any protection of the means used, would, if carried to its logical conclusion, eliminate the right entirely. The right to speak freely must encompass inherently the right to communicate. The right to

speak one's views aloud, restricted by the ban that prevented anyone from listening, would frame a hollow right. Rather, freedom of speech entails communication; it contemplates effective communication." However, the court in *Wollam* continued, stating (pp. 284-285): "On the other hand the selection of the means of communication and the use of such means is not limitless. The municipality may issue reasonable and necessary regulations as to such matters. But the right to regulate does not necessarily sanction the outright prohibition. . . . The municipality in the proper exercise of its police power may prescribe volume limitations. Thus the proper test of regulation by a municipality in this area turns upon whether the regulation is a reasonable and necessary one. . . ."

In *Wollam, supra,* the court declared unconstitutional an ordinance relating to the use of sound trucks. Before such a truck could be used, a permit of the chief of police was required. Other burdensome requirements were established by the ordinance. Among other things it required that the truck could be used only 4 hours a day and that it must proceed at a speed of at least 10 miles per hour. It limited the equipment to a maximum output of 15 watts and provided that the sound must be inaudible at a range of 200 feet. Holding the ordinance to be violative of the First Amendment the court stated (p. 288): "In summary, the vice of the present ordinance lies in its practical prohibition of the conveyance of a message to the public. The ordinance prevents any continuous statement, argument, or sustained presentation of a point of view that cannot be transmitted during the truck's fleeting, momentary passage. Yet the purposes of the ordinance could have been achieved without such an incursion into the field of free speech. An ordinance narrowly drawn may properly reach to the evils which it seeks to avoid. Instead, here, the ordinance sweeps within its broad ambit the constitutional right to tell a whole story by means of this method of communication."

There appears to be a dearth of authority directly relating to the problem before us. But one such case, *Buxbom* v. *City of Riverside* (S.D. Cal. 1939) 29 F.Supp. 3, has come to our attention. There, among other things, an ordinance made it unlawful to throw a newspaper upon private property without consent of the occupant. The court, in upholding the ordinance stated (pp. 6-7): "I cannot see how this ordinance, and especially the provisions in sections 4, 5 [referring among other things to newspapers], and 6, requiring permission of

the owner of property before putting handbills or advertising on it, can be said to violate the right of a free press. Freedom of the press is a part of that freedom of expression which includes free speech. The right to speak freely *does not imply* the right to force one's speech on another's private premises. . . . [N]o constitutional principle gives one the right to stand on my front lawn and deliver a speech to whomever may listen. . . . In like manner, the right to distribute literature and pamphlets does not imply the right to 'force' acceptance by placing them on another person's premises without his permission. Governmental agencies may protect a property owner in the enjoyment of his property. They may ward off those who would annoy him, by trespassing on it in one way or another. . . . Nor is any constitutional norm violated when he who would spread literature or advertising on private premises is compelled to obtain the owner's consent. A man's home is still his castle. If, to paraphrase Chatham, the King is not free to enter the humblest cottage without being guilty of trespass, what 'Divinity doth hedge' the purveyor of handbills that he should be free to enter? If, by the common law of England, the humblest cotter, to quote Chatham, 'may bid defiance to all the forces of the crown,' and a similar right is guaranteed by the Fourth Amendment to the Constitution of the United States, whence the right of the dispenser of printed matter to immunity from this? If governmental agencies may aid the enjoyment of people's homes by zoning ordinances [citations] ; if the erection of bill boards may be made dependent upon consent of owners of property in the neighborhood [citations] ; and even solicitation of custom or patronage in railroad stations or on public streets in front of them may be prohibited [citation] or be made dependent upon consent of the railroad or abutting owner [citation], it is incomprehensible how the right to print and distribute freely may be broadened into absolute freedom to invade another's property rights by littering his premises without his consent.''

The principles announced by *Buxbom* v. *City of Riverside, supra*, seem generally to be supported by the decisions of the highest court of this state and of the United States.

The United States Supreme Court in *Lovell* v. *Griffin*, 303 U.S. 444, 452 [82 L.Ed. 949, 954, 58 S.Ct. 666], described the distribution of pamphlets and newspapers as ''historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest.'' And

in *Schneider* v. *State,* 308 U.S. 147, 164, [84 L.Ed. 155, 166, 60 S.Ct. 146], the same court stated: ". . . pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees."

However, "The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life." (*Breard* v. *Alexandria,* 341 U.S. 622, 642 [95 L.Ed. 1233, 1248, 71 S.Ct. 920, 35 A.L.R.2d 335].) In *Adderley* v. *Florida,* 385 U.S. 39, 47-48 [17 L.Ed.2d 149, 155-156, 87 S.Ct. 242], referring to an argument having "as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please," the court stated: "That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, *Cox* v. *Louisiana, supra,* [379 U.S.] at pp. 554-555 and 563-564 [13 L.Ed.2d at pp. 484 and 491, 492, 85 S.Ct. 476]. We reject it again."

In *Kovacs* v. *Cooper,* 336 U.S. 77, 88 [93 L.Ed. 513, 523, 69 S.Ct. 448, 10 A.L.R.2d 608], the court declared: "The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself."

Heavily relied upon by plaintiff is *Martin* v. *Struthers, supra,* 319 U.S. 141 [87 L.Ed. 1313, 63 S.Ct. 862]. That case concerned a local ordinance which had the effect of forbidding members of a religious group from knocking on the doors of homes and delivering leaflets to persons therein. The ordinance was held to be a First Amendment violation. That holding is inapplicable to the instant case where plaintiff was not precluded from going upon private property and leaving her

paper with its occupant. Indeed *Martin* v. *Struthers* (at p. 143 [87 L.Ed. at p. 1317]) holds that "the peace, good order, and comfort of the community may imperatively require regulation of the time, place and manner of distribution [of literature]."

In determining First Amendment rights a distinction is to be made between communications transmitted to willing recipients and messages forced upon those who do not wish to receive them. Thus *Martin* v. *Struthers, supra,* pp. 146-147 [87 L.Ed. p. 1319], comments upon the right to transmit information as follows: "Freedom to distribute information to every citizen *wherever he desires to receive it* is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved." (Italics added; see also *Breard* v. *Alexandria, supra,* 341 U.S. 622, 643 [95 L.Ed. 1233, 1248].) And *Kovacs* v. *Cooper, supra,* 336 U.S. 77, 87 [93 L.Ed. 513, 522], states: "The right of free speech is guaranteed every citizen that he may reach the minds of *willing listeners* and to do so there must be opportunity to win their attention." (Italics added.)

It has been held that a municipality has power to enact regulations against throwing literature broadcast in the streets. (See *Schneider* v. *State, supra,* 308 U.S. 147, 160-161 [84 L.Ed. 155, 164-165]; *Kovacs* v. *Cooper, supra,* 336 U.S. 77, 87 [93 L.Ed. 513, 522].) This rule would seem reasonably to apply to the case before us where the ordinance proscribes the uninvited throwing of literature on private property.

From a consideration of the foregoing we conclude that the ordinance in question has no First Amendment or other constitutional taint. It appears to be reasonably and narrowly drawn. It does not, as was the case in *Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276, bring about the practical prohibition of the conveyance of a message to the public. Plaintiff is permitted to hand her newspaper to any Pacific Grove householder who will accept it, and to solicit consent to thereafter throw the paper onto the premises.

Plaintiff states that she is precluded by another ordinance numbered 502 N.S. of the City of Pacific Grove from going upon private residential property for the purpose of handing her newspaper to a householder. This ordinance, as pertinent here, reads as follows: "It shall be unlawful for any . . . person to go upon the premises of any private residence in the City of Pacific Grove not having been requested

or invited so to do by the owner or . . . occupant . . . of said private [residence] for the purpose of soliciting sales, or orders of sales of any or all types of real or personal property, or any interest therein, or for the sale of any type of services, or for the purpose of demonstrating or advertising the same.''

Plaintiff misinterprets this ordinance which is of the type known as a ''Green River'' ordinance. It refers only to sales or solicitation of sales, and does not in any way affect plaintiff's right to go upon private property for the purpose of giving her newspaper to a willing occupant personally or to solicit consent to thereafter place the paper on the property. Such ''Green River'' ordinances have repeatedly been upheld. (See *Town of Green River* v. *Bunger*, 50 Wyo. 52 [58 P.2d 456]; *Breard* v. *Alexandria*, *supra*, 341 U.S. 622; 77 A.L.R.2d 1225-1228.)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.