Opinion
SMITH, J. *
Each of the four defendants was charged with violating section 602.9, Penal Code. The elements of such crime are: 1) coming upon school grounds or adjacent areas “without any lawful business,” 2) interfering with or disrupting school activities, and 3) remaining after being asked to leave. The section defines “lawful business” as a “reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance.” Thus, to satisfy the first element, the People must show that the business of each defendant is unlawful.
On the morning of January 9, 1969, the defendants and other students participated in a demonstration at the entrance to the campus of Southwest College. They were picketing and boycotting and urging drivers coming to the campus to park their cars across the street instead of in the campus parking lot. Approximately 100 of them were in a group at the sole driveway entrance to the campus. About 90 percent of the students came in cars and their only means of access was through this entrance. (R.T. 251.) The demonstrators occupied the driveway from one side to the other in lines, sometimes as many as four lines, and so close together that cars could not get through without stopping. (R.T. 344-346, 263, 400-404, 412, 487.) When the cars stopped, students on the “line” or between the “line” and Western Avenue talked to the drivers, gave them literature, and urged them to support the boycott. If they wished to support it, they made U-turns and drove off. If they did not wish to support the boycott, the practice was for the line to open and let cars drive through. Pedestrians also were stopped. (R.T. 346, 420-421.) There is no direct evidence which clearly indicates that any cars were prevented from going through if the drivers wished to do so after being stopped; however, there was one period of 15 minutes when no cars passed through. (R.T. 272-273, 373.) There was also evidence that drivers were asked to leave or told to leave. (R.T. 410-411.) There was a traffic jam and cars were backed up to and into Western Avenue. All four of these defendants were on the “line” at some time during the demonstration. (Re Horton: R.T. 350, 354, 362, 365, *Supp. 7 372, 424-425. Re Sanders: R.T. 356, 378, 380, 508. Re Ratcliffe: R.T. 413, 415. Re Brown: 414, 416, 430-431.) Following the request to leave, defendant Horton left the “line” and spent most of his time during the next 15 minutes and until his arrest standing on the apron which connects the driveway to Western Avenue and passing out literature and talking to drivers who were stopped because of the “line” up ahead. (R.T. 349-350, 354-355, 428, 557.) There is also some evidence that Brown and Sanders during part of this time were doing the same thing, although usually closer to the “line.” Defendants Horton and Sanders testified that they came upon the campus with no intent to violate the law or to do any acts which are in violation of the law. Both Horton and Sanders had scheduled classes during this period (R.T. 283) but neither attended.
The People at the start of the trial took the position that the unlawful business which they expected to prove consisted of doing the picketing and boycotting in such a manner that they 1) disturbed the peace, 2) constituted an unlawful assembly, and 3) obstructed the road and interfered with traffic. At the end of the trial, the court instructed the jury with respect to the third only, reading to the jury sections 370 and 372, Penal Code (obstructing public property, including streets) and section 21954, Vehicle Code (failing to yield the right of way). Thus, the trial judge ruled with the defendants, as a matter of law, that the picketing was peaceful and there was no disturbance of the peace and no unlawful assembly. The jury verdict with respect to the first element of the crime was necessarily limited to an implied finding based upon picketing that interfered with pedestrian and vehicular traffic and to no other violations of law. Because the instructions were so limited, the jury was required to treat any other form of picketing as lawful.
Defendants contend that such state laws are subordinated to First Amendment rights and that under cases such as Edwards v. South Carolina (1963) 372 U.S. 229 [9 L.Ed.2d 697, 83 S.Ct. 680], they had a right to picket and boycott in the manner that they did despite such laws. The cases relied upon by defendants (and others cited by the People) hold the exact contrary.
The language relied upon by defendants in the Edwards case must be considered in the context of. the holding. The defendants in Edwards were charged with the common law crime of breach of the peace. Eight of the nine justices held that the facts, as a matter of law, did not show a breach of the peace. One justice thought there was sufficient evidence. Defendants in our case successfully relied upon that case at the trial level. The trial judge here held similarly to the eight justices and ruled as a matter of law that he would not submit the issue of breach of the peace to the jury. That *Supp. 8 issue is not before us. On that issue, defendants have already won. The Edwards case does discuss the problem presently on appeal: 1) at pages 231-232 [9 L.Ed.2d at p. 700] the court comments that there was “no obstruction of pedestrian or vehicular traffic”; and 2) at pages 236-237 [9 L.Ed.2d at pp. 702-703] the court said that if there were “evidence that they had violated a law regulating traffic . . . this would be a different case.” The dictum thus supports the statute now before us.
Both sides rely on Cox v. Louisiana (1965) 379 U.S. 536 [13 L.Ed.2d 471, 85 S.Ct. 453] (and the companion case by the same name at 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476].) In the first case, there were two counts: 1) breach of the peace and 2) obstructing public passages. With respect to the first count, the state court had ruled that in Louisiana one could be guilty of a breach of the peace for asserting and advocating unpopular ideas. This is clearly contrary to Terminiello v. Chicago (1949) 337 U.S. 1 [93 L.Ed. 1131, 69 S.Ct. 894], and the statute was held unconstitutional. The basis for the decision is unrelated to our case. Even more important, nothing in the first count concerns us since, as we have already seen, the trial judge here ruled with the defendants that there was no breach of the peace. With respect to the second count,' the Supreme Court held that the statute was constitutional; and because of the similarity, this tends strongly to support our statute. The conviction was reversed for entirely different reasons. The administrative officials in Louisiana in granting and denying permits to parade and assemble did so on an arbitrary and selective basis. Thus, the statute in its application was arbitrary and discriminatory, and the Supreme Court so held. The second Cox case involved a statute prohibiting picketing “near” a courthouse with intent to influence judges and juries. The statute was held to be constitutional; which again tends to support the constitutionality of our statute. The conviction was reversed for entirely different reasons. The police had first told them they could assemble across the street from the courthouse (thereby administratively determining that area as not being “near” within the meaning of the statute) and then told them to stop and arrested them for not stopping. The Supreme Court thought the administration of the law was arbitrary, misleading, and somewhat akin to entrapment.
Thus, there is nothing in either the Edwards or Cox cases, except language taken out of context, which supports appellants. Both cases support the People. In addition, the People rely upon Cameron v. Johnson (1968) 390 U.S. 611 [20 L.Ed.2d 182, 88 S.Ct. 1335] (holding that picketing may be stopped where it interferes with ingress to and egress from public buildings) and Adderley v. Florida (1966) 385 U.S. 39 [17 L.Ed.2d 149, 87 S.Ct. 242] (holding an assemblage improper where it blocked vehicular traffic to a jail). Also see In re Bacon (1966) 240 Cal.App.2d 34 at pages 56 *Supp. 9 to 58 [49 Cal.Rptr. 322] for its analysis of the three counts in the two Cox decisions. Also see Pain v. Municipal Court (1968) 268 Cal.App.2d 151 at page 154 [73 Cal.Rptr. 862] where the Cameron and Cox cases are cited and quoted for the proposition that the “fact that free speech is intermingled with such conduct does not bring with it constitutional protection.”
Defendants, in discussing the United States Supreme Court cases, fail to note that there is a fundamental difference between the Terminiello facts and the Adderley facts. The Terminiello decision represents “pure speech” cases, i.e., speech not commingled with acts and occurring on defendant’s property (owned or rented) or on property primarily dedicated for assemblies and speeches. The Adderley decision represents speech commingled with acts (in themselbes unlawful) and on property primarily dedicated for other purposes. In the Terminiello situation, if there is any balancing at all, it is weighted heavily in favor of free speech and anything short of a clear and present danger to persons or property does not and should not outweigh it. In the Adderley case and other similar decisions, the United States Supreme Court has already done the balancing for us and has held that asserting First Amendment rights does not give one a license to flout the traffic laws. There is no more balancing for a jury to do. A sound truck or a truck carrying a banner may not go 80 miles an hour in a 65 mile an hour zone, or even 66 miles an hour. It may not go through stop signs, even slowly, without first stopping. Pedestrians lose their right of way if they cross the highway at other than marked or unmarked crosswalks. The middle of a roadway is no more an appropriate place for holding an assembly than are the grounds of a jail. The fundamental difference between Terminiello and Adderley is this: If you stop speeches in the former situation, you stop that kind of public speeches altogether; while in the latter situation, there is no censorship but merely reasonable regulation as to place. Also, our problem should not be confused with an intermediate situation such as picketing on a sidewalk. Sidewalks are dedicated in part for meeting people and exchanging ideas. Thus, neither the picket nor other pedestrian has a superior right of way. Their interests must be weighed and balanced. Our case does not involve the clear and present danger problem of Terminiello, nor the balancing problem of the sidewalk picket, but only the problem of whether the state statute regulating acts is enforced uniformly and without discrimination. That is what the United States Supreme Court cases hold, uniformly and without exception.
Also, defendants apparently equate peaceful picketing with lawful picketing. There are, of course, many ways that one can picket unlawfully and still be peaceful. Most traffic violations (and most misdemeanors of *Supp. 10 all kinds) are committed without violence. Just because picketing is peaceful is no indication that it is lawful.
Defendants also attack the statute as being unconstitutionally vague and uncertain. Our views are expressed in People v. Agnello (1968) 259 Cal.App.2d 785 [66 Cal.Rptr. 571] which quotes at length our decision construing a similar statute, section 602.7, Penal Code. Also see Parrish v. Municipal Court (1968) 258 Cal.App.2d 497 [65 Cal.Rptr. 862] and In re Bacon, supra, construing section 602, subdivision (n), Penal Code, formerly 602, subdivision (o), Penal Code. While the statute in the Agnello case did not contain the phrase “without lawful business,” such phrase is not vague and uncertain, inasmuch as the section itself expressly defines it. Also, the records of the Legislature contain an opinion of the legislative counsel with respect to the activities which constitute “lawful business” as used in this section. Nor is there any dispute between the defendants and the People regarding that definition. We too accept that definition, including the views expressed by the legislative counsel. However, picketing in a manner that interferes with traffic and the rights of way of motorists is clearly not lawful business as defined in the statute nor is it one of the examples discussed by the legislative counsel.
Defendants also argue that unless the statute is construed so as to require scienter and specific intent (i.e., intent to violate a law as distinguished from the general intent to do the acts), the statute is unconstitutional, relying on such cases as Smith v. California (1959) 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215] and Lambert v. California (1957) 355 U.S. 225 [2 L.Ed.2d 228, 78 S.Ct. 240]. Both cases involved purely passive conduct and are exceptions to the general rule that unless the statute expressly requires a specific intent, then general intent (i.e., intent to do the acts) is all that is required. Here the conduct is active. Part of the problem in the Smith and Lambert cases was that, since the conduct was passive, there ought to be some warning to the defendant that he might be violating the law so that he would have an opportunity to obey it. Here the conduct is not only active but in addition the statute has its own built-in warning system, i.e., before an arrest can be made, the defendant must be requested to leave. The violation does not occur until that request is ignored. Intent is involved in the determination of “unlawful business,” but such intent is the intent to engage in proscribed activity, not the intent to violate some specific law. Similarly, in “general intent” crimes, “knowingly” means1 merely knowledge of the existence of the facts and not knowledge that the acts are unlawful.
Defendants also argue that even if the statute is valid, the evidence is insufficient. Even under defendant’s version of the facts, section 370, Penal Code and section 21954, Vehicle Code were violated. Defendants *Supp. 11 apparently believe that, because they claim they let everyone through who wanted to go through, such conduct complies with the law. It was the duty of defendants not to obstruct the roadway and to yield the right of way. Drivers have a right to pass through without stopping, as a matter of law, and not merely as a matter of grace and with permission of the defendants after first being stopped. However, the ultimate question regarding “unlawful business” is whether at the time they came on the premises they had such unlawful intent (i.e., the general intent to do the acts). Such general intent is required by section 20, Penal Code. Section 21, Penal Code provides the method of proof, to wit, “by the circumstances connected with the offense.” There is no merit to defendants’ contention that we are bound by the self-serving declarations of defendants regarding their general intent. The jurors are entitled to draw inferences from all of the evidence, both with respect to what the defendants did individually and what they did as part of a group. They may not disavow the group conduct. The jury could have found that they all aided and abetted one another. Compare People v. Gonzales (1970) 4 Cal.App.3d 593 [84 Cal.Rptr. 863].
With respect to the second element of the crime, interference and disruption of school activities, the evidence that this was the only entrance to the campus and that 90 percent of the students came in automobiles, coupled with the obstruction of traffic, supports the implied finding of the jury.
With respect to the final element, whether they remained, there was sufficient evidence to support the implied finding of the jury. While Mr. Horton left the “line,” he was still working with the group by passing out literature and talking to the drivers who were forced to slow down and stop because of group activity. The statute expressly applies to the streets adjacent to school grounds.
Appellants complain that many of their instructions were not given. We shall consider each such complaint in the order presented by appellants.
First, the refusal to give defendants’ No. 9: This would have told the jury that if the defendants came upon the school grounds for the purpose of “peacefully picketing” and without “intending to violate any statute” then their business was lawful. But not all peaceful picketing is lawful, and if they did picket unlawfully, their mere subjective intent not to violate any statute is wholly immaterial. The only intent that concerns us is the general intent (the intent to do the act) and not the specific intent to violate a specific statute. Although the requested instruction could not be given, the trial judge did completely cover the subject matter of the instruction, but in a correct manner. The trial judge did instruct on the subject of peaceful picketing and general intent.
*Supp. 12 It has also been suggested that in defining the right to peacefully picket (defendants’ instruction No. 56, as modified), the trial court failed to instruct the jury as to what peaceful picketing is lawful picketing. The criticism is wholly without merit. The trial court was very precise in limiting the consideration of the jury to only one kind of unlawful picketing, i.e., picketing in such a manner that it interfered with traffic and the rights of way of motorists. While there are many other ways to picket unlawfully, no others were submitted to the jury, and thus the case as submitted to the jury required the latter to assume that the pickeing in this case was lawful in all other respects. The trial judge not only did instruct on the subject but did so completely.
Second, with respect to reading sections 370 and 372, Penal Code to the jury: Defendants complain that the court did not advise the jury that the word “obstruct” means to obstruct “unreasonably.” That, of course, is what the statute means. Any presence on streets, including a pedestrian making a normal legal crossing, involves some obstruction and any reasonable construction of the statute would exclude such conduct. The case cited by defendants, Pain v. Municipal Court, supra, held that the statute applies only to “unreasonable” obstructions. The problem is not peculiar to this statute. Every statute must be construed reasonably. This does not mean, however, that in reading statutes to the jury, a judge should interpolate “reasonable” or “unreasonable” before every crucial word. That would compel the jury to determine what the Legislature intended to cover and not to cover. The latter is a judicial function. In a proper case, the judge should rule what is not covered. Thus, if a case reached the court involving only obstruction from a normal legal street crossing, the judge should dismiss the case; not let the jury speculate that it might be “unreasonable.” Similarly, if the People’s case indicated deliberate interference with traffic, whereas the defendant’s case indicated a normal street crossing, the judge should not submit both theories to the jury with the admonition that they were to decide if the obstruction was “unreasonable,” but the judge should specifically tell the jurors that if they found merely a normal street crossing that was not covered by the statute at all. So even if we had that kind of a problem, it would not be solved by inserting the word “unreasonable” into the reading of the statute. However, we do not have that kind of a case Even under the defense theory, there was a “line” that went from one side of the street to the other and stopped all traffic. The issue was whether or not they came upon the school grounds to picket in that manner. The issue was not whether 1) they came upon the school grounds to picket that way or 2) they were merely passing by and making a normal street crossing and got caught in the mass of arrests. The latter issue simply did not exist, and defense counsel recognized it by not requesting an instruction. A fortiori, there was no duty to submit sua sponte an instruction upon such nonexistent problem. For the *Supp. 13 same reason, there could be no prejudicial error, even if for some reason there were error.
Third, the defendants complain of the failure to give “free speech” instructions. Although the defendants make much of this point, it has little significance because neither “free speech” nor “peaceful picketing” is a license to flout traffic laws. The court nevertheless did instruct on the right to demonstrate and peacefully picket to protest grievances. (R.T. 701: 10-25.) The only such instructions specifically referred to by defendants that were refused are Nos. 27, 28 and 29. All three relate to unlawful assembly and possibly also to disturbing the peace. Since the trial court ruled with the defendants on these issues and did not instruct as requested by the People, the giving of these instructions would not only have been surplusage but also would have been confusing to the jury. Defendants would have had far more cause to complain if the instructions had been given.
Fourth, the refusal to give Nos. 40 and 42: These are “reasonable doubt” instructions. The court did give the customary reasonable doubt instructions (R.T. 692:5-26) and also the customary instructions relative to weighing circumstantial evidence (R.T. 694:4-23). Furthermore, the last sentence of each such requested instruction was erroneous in that it is in the nature of a “formula” instruction advising the jury to find the defendants not guilty upon the finding of a single fact. Even if such fact were found in favor of the defendants, other facts might justify conviction and hence the instructions erroneously stated the law.
Fifth, the refusal to give defendants’ instructions on scienter and specific intent. The only instruction specifically mentioned is No. 41. It twice refers to a specific intent to violate the law, rather than the general intent to do the acts, and is therefore erroneous. The court did instruct at length and correctly on the subject of “general intent” and the meaning of “knowingly.” (R.T. 696: 24-698:8.)
We have previously noted that this is not the kind of crime which requires scienter and specific intent in order to make the statute valid. In connection with instructions, the additional argument is made that nevertheless an instruction should have been given sua sponte on specific intent. Such argument is based on the purported analogy to prosecutions for burglary. In the burglary case, the act of entry (for the unlawful purpose) is the act which constitutes the crime, whereas here no crime is committed merely because of entry for unlawful business and it would have been error to so instruct. Under this statute, no crime is committed until the act of remaining after being warned to disperse. The entry upon unlawful business is an essential element of the crime but it is not the crime itself. It is a condition precedent with respect to which the jury was fully instructed both 1) in the language *Supp. 14 of the statute, and 2) by additional instructions stating specifically which laws the jury could consider in ascertaining if the business of the defendants was unlawful.[1] Defendants in their briefs and requested instructions use the words “specific intent” to indicate an intent to violate the law as distinguished from the intent to do the acts. In that sense, this is not a specific intent statute at all, and quite properly no instructions were given thereon, either sua sponte or as requested. If, however, “specific intent” is now defined as including the unlawful reasons for entry, that subject was fully covered by the instructions and in that sense “specific intent” instructions were given (although neither we nor the People, nor defendants in their briefs, called them that).
Defendants’ arguments are built upon a series of fallacious premises:
1. That the United States Supreme Court has held that one asserting First Amendment rights may flout the traffic laws.
2. That, at least, the jury may weigh them and balance them and determine that one asserting First Amendment rights may flout the traffic laws.
3. That, at least, if one acts peacefully he acts lawfully.
4. That, at least, if one does not intend to violate the law (even though he intends to do the acts), it is lawful.
If one assumes that those premises are correct, then the judge was most unfair in his instructions. If, however, those premises are fallacious, the trial judge gave a very complete and very fair set of instructions.
Since the above premises are incorrect, and since our independent examination of the whole record does not disclose any violation of any constitutional right of any defendant, and since the statute was clearly violated, we must and do affirm the orders granting probation.
Vasey, Acting P. J., concurred.

Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

It is not necessary to go further in the instructions and apply the law to the specific facts. That would be argument and is the function of counsel.

See majority opinion, ante, page Supp. 7.