[Civ. No. 12688. Third Dist. Apr. 19, 1971.]

JACK WESTLEY YOUNG, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SACRAMENTO JUDICIAL
DISTRICT OF SACRAMENTO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Blackmon, Isenberg & Moulds and Clyde Blackman for Plaintiff and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edsel W. Haws, Charles P. Just, Roger E. Venturi, Frank A. Iwama and James M. Monty, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**FRIEDMAN, Acting P. J.**—Appellant Jack Young faces prosecution for violating Sacramento County Ordinance No. 409. The ordinance prohibits

peddling or giving away goods or wares "along or upon" public roads and highways in the unincorporated area of the county.[1] The municipal court overruled Mr. Young's demurrer to the complaint and the superior court rejected his application for a writ of prohibition. Both proceedings were grounded upon his claim that the ordinance violated freedoms guaranteed him by the First and Fourteenth Amendments to the federal Constitution. He is here by means of an appeal from the judgment of the superior court.

■   The writ of prohibition was an appropriate remedy under the circumstances. (*Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 463 [171 P.2d 8]; *Simpson* v. *Municipal Court* (1971) 14 Cal.App.3d 591, 594 [92 Cal.Rptr. 417].)

The case has not been tried and the constitutional challenge is aimed at the face of the ordinance. Nevertheless, some transcribed testimony has been incorporated in the record on appeal. With his demurrer Mr. Young brought on for argument a motion under Penal Code section 1538.5 for an order directing the return of some periodicals seized by the arresting officer. At the hearing the arresting officer testified. Summarization of his testimony may usefully illustrate the ordinance in actual operation:

The officer, a deputy sheriff, was in the vicinity of El Camino and Watt Avenues sometime between 4 and 6 p.m. on a Sunday. (Both streets are busy suburban boulevards, lined with business establishments and shopping centers.) Automobile traffic was fairly heavy. Mr. Young sat on a sidewalk immediately adjacent to the eastbound vehicle lanes of El Camino Avenue. He held up a copy of a periodical called Berkeley Barb, displaying it to oncoming motorists. Next to him on the sidewalk was a stack of copies of the Berkeley Barb. The officer testified that vehicles were slowing to see what Mr. Young was selling. In the officer's opinion a traffic hazard was being created. He arrested Mr. Young for a violation of Ordinance No. 409 and "impounded" 51 copies of the Berkeley Barb. He testified that he would not have made the arrest had a traffic hazard not existed.

■   Streets, sidewalks and parks are historically associated with exercise of the rights of communication protected by the First Amendment; access

---

[1]Ordinance No. 409 provides in part:

"Section 1. It shall be unlawful for any person to peddle or hawk any goods, wares, merchandise or edibles, or solicit any customers or patrons, or to give away or offer to give away any goods, wares, merchandise or edibles, along or upon any public road or highway in the unincorporated area of the County of Sacramento.

"Section 2. The Board of Supervisors expressly find that peddling or hawking goods, wares, merchandise or edibles, on public roads or highways interferes with the free flow of traffic thereon and constitutes a serious and dangerous hazard to the public.

"Section 3. This ordinance shall not prohibit a peddler or hawker of goods, wares, merchandise or edibles from taking orders or delivering any commodity from any vehicle from that portion of the public road or highway immediately adjacent to the premises or residence of the customer, patron or purchaser."

to them for the purpose of exercising these rights cannot be denied broadly and absolutely. (*Food Employees* v. *Logan Valley Plaza* (1968) 391 U.S. 308, 315 [20 L.Ed.2d 603, 610, 88 S.Ct. 160]; *Diamond* v. *Bland* (1970) 3 Cal.3d 653, 657-658 [91 Cal.Rptr. 501, 477 P.2d 733].) ▮ The First Amendment's guarantee of freedom of the press includes circulation and distribution as well as publication. (*Bantam Books* v. *Sullivan* (1963) 372 U.S. 58 [9 L.Ed.2d 584, 83 S.Ct. 631]; *Talley* v. *California* (1960) 362 U.S. 60 [4 L.Ed.2d 559, 80 S.Ct. 536].) The Sacramento County ordinance has a restrictive effect upon the distribution of printed matter "along or upon" the public streets. Hence it is open to scrutiny for the purpose of assuring inviolability of freedom of the press.

The ordinance is also an expression of municipal authority to control use of the streets to ensure safe travel. ▮ A restriction upon use of the streets, designed to promote public safety, cannot be disregarded or obliterated by the attempted exercise of some civil right, which, in other circumstances, would be entitled to protection. (*Cox* v. *Louisiana* (1965) 379 U.S. 536, 554 [13 L.Ed.2d 471, 483, 85 S.Ct. 453].)

Faced with the necessity of assuring the maximum scope of First Amendment freedoms consistent with legitimate governmental objectives, the courts have evolved the overbreadth doctrine. In brief, "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*NAACP* v. *Alabama* (1964) 377 U.S. 288, 307, 308 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302]; *In re Hoffman* (1967) 67 Cal.2d 845, 849 [64 Cal.Rptr. 97, 434 P.2d 353]; *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 286-287 [29 Cal.Rptr. 1, 379 P.2d 481].)

A number of decisions illustrate the general thesis that a local ordinance restricting the sale or distribution of printed matter will survive First Amendment challenge only if it serves a legitimate end and is narrowly drawn to achieve that end. In *Lovell* v. *Griffin* (1938) 303 U.S. 444 [82 L.Ed. 949, 58 S.Ct. 666], the court invalidated an ordinance prohibiting all distribution of literature without a license. In *Schneider* v. *Irvington* (1939) 308 U.S. 147 [84 L.Ed. 155, 60 S.Ct. 146], and *Jamison* v. *Texas* (1943) 318 U.S. 413 [87 L.Ed. 869, 63 S.Ct. 669], ordinances were nullified which banned or imposed prior restraints upon the distribution of handbills and leaflets. *Talley* v. *California, supra,* invalidated an ordinance which banned anonymous handbills. *Valentine* v. *Chrestensen* (1942) 316 U.S. 52 [86 L.Ed. 1262, 62 S.Ct. 920], sustained an ordinance prohibiting throwaway distribution of commercial matter. (See also, *In re Mares* (1946) 75 Cal.App.2d 798 [171 P.2d 762].)

In *In re Hoffman, supra,* the defendants had been handing out leaflets in a railway station and were arrested for violating a Los Angeles city ordinance which prohibited unnecessarily extended presence in railway, airport or bus depots. The court nullified the ordinance as an overbroad restriction upon First Amendment freedoms. *Di Lorenzo* v. *City of Pacific Grove* (1968) 260 Cal.App.2d 68 [67 Cal.Rptr. 3], sustained an ordinance which prohibited deposit of throwaway matter on residential property without the owner's consent, holding that the ordinance was (at p. 74) "reasonably and narrowly drawn" to serve a valid public interest.[2]

Viewed in the light of these decisions, the Sacramento County ordinance suffers from the vice of overbreadth. Section 1 of the ordinance (fn. 1, *supra*) describes the prohibited activity. Section 2 of the ordinance is a legislative finding. The finding declares, in essence, that hawking articles *on* public streets interferes with traffic flow and creates danger. When the reader turns from that finding to the prohibition in section 1, he discovers that the prohibition extends far beyond the finding; for section 1 prohibits the sale or gift of goods *along or upon* any public road or highway.

The public sidewalks of America, particularly in business districts, are an accepted and traditional locale for the sale of newspapers and the distribution of printed appeals. The sidewalk newspaper vendor finds some patronage among the occupants of passing automobiles. More often, he seeks the patronage of pedestrians on the sidewalks. So does the distributor of pamphlets and handbills. The sidewalks are longitudinal strips of concrete *along* the public streets. Vendors sell and distributors give away publications to pedestrians *along* the public streets. In the face of the Sacramento County ordinance, no vendor or distributor of printed matter may address himself to pedestrians along the street without risking arrest and prosecution.

The ordinance sweeps up not only activity along busy avenues, but also distributors who address themselves to pedestrians and householders along quiet residential streets characterized by little automobile travel. Equally with the vendor who seeks customers among the occupants of moving automobiles, the evangelist who gives out religious tracts and the campaigner who distributes election handbills often conducts his activity on the sidewalks *along* the public streets.

Extrapolations from the phrase "along or upon" are not the real vice of the Sacramento County ordinance. The vice lies in its prohibition of

[2]On March 26, 1971, the California Supreme Court ordered a hearing in a parallel case. (*Van Nuys Pub. Co.* v. *City of Thousand Oaks* (Cal.App.) 92 Cal.Rptr. 76.) Thus the court has demonstrated a desire to review local ordinances of the kind sustained in *Di Lorenzo, supra.*

pedestrian-addressed activities when a restriction upon vehicle-addressed activities would have served its purpose. In short, the prohibitory portion of the ordinance is not narrowly limited to activities which endanger automobile traffic. It extends broadly to peaceful, communicative activities which pose not the slightest hazard to public safety. It exposes to arrest all who would sell or give pedestrians printed matter. ■ The ordinance is unconstitutionally overbroad because its first section would punish constitutionally protected activities, although a narrower measure would fully achieve the objective described in its second section.

■ Where an enactment is attacked on First Amendment grounds, the court is not limited to examination of the application involved in the particular case, but may consider all possible applications of the statute. (*Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 450 [39 Cal.Rptr. 228, 393 P.2d 428]; see also, *Kunz* v. *New York* (1951) 340 U.S. 290 [95 L.Ed. 267, 71 S.Ct. 312]; Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844.)

The judgment is reversed and the cause remanded with directions for the issuance of a writ of prohibition as prayed.

Janes, J., concurred.

**REGAN, J.**—I dissent. In my view the Sacramento County ordinance is reasonable, not broader than constitutionally permissible, and constitutes a necessary and proper exercise of the police power of the county.

We must balance the various community interests in passing on the constitutionality of local regulations of the character involved here, always keeping in mind that the freedom of the First Amendment occupies a preferred position. (*Saia* v. *New York* (1948) 334 U.S. 558, 562 [92 L.Ed. 1574, 1578, 68 S.Ct. 1148].) It must be remembered, however, that "pure speech" is not involved here, but rather acts and conduct incident to such expression. (See *Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 152 [22 L.Ed.2d 162, 168, 89 S.Ct. 935].) "[A]cts and conduct incidental to any speech may be regulated. The fact that people assert First Amendment rights does not place them above the law and immunize them from obeying state laws, so long as such state laws are enforced fairly and without discrimination. [Citations.]" (*People* v. *Uptgraft* (1970) 8 Cal.App.3d Supp. 1, 5-6 [87 Cal.Rptr. 459].)

As a general proposition, a person (or persons) has no First Amendment right to obstruct traffic in a public street in violation of a penal law or regulation which prohibits such conduct. (See *Shuttlesworth* v. *Birmingham*, *supra*, 394 U.S. at p. 152 [22 L.Ed.2d at p. 168]; *Walker* v. *Birmingham*

(1967) 388 U.S. 307, 316 [18 L.Ed.2d 1210, 1217, 87 S.Ct. 1824]; *Cox v. Louisiana* (1965) 379 U.S. 536, 554-555 [13 L.Ed.2d 471, 483-484, 85 S.Ct. 453]; see also *Food Employees* v. *Logan Valley Plaza* (1968) 391 U.S. 308, 320 [20 L.Ed.2d 603, 613, 88 S.Ct. 1601]; *Edwards* v. *South Carolina* (1963) 372 U.S. 229, 236 [9 L.Ed.2d 697, 702-703, 83 S.Ct. 680]; *Pain* v. *Municipal Court* (1968) 268 Cal.App.2d 151 [73 Cal.Rptr. 862]; *People* v. *Huss* (1966) 241 Cal.App.2d 361, 370 [51 Cal.Rptr. 56]; *People* v. *Horton* (1970) 9 Cal.App.3d Supp. 1 [87 Cal.Rptr. 818]; cf., *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 287 [29 Cal. Rptr. 1, 379 P.2d 481].) Thus, a municipality has the right, within reason, to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use.

In *Cox* v. *Louisiana, supra,* 379 U.S. 536, 555 [13 L.Ed.2d at page 484], the court states: "From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. *The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection.*" (Italics added.)

The ordinance is limited to conduct related to the free and unobstructed flow of traffic on the public roadways and I find no uncontrolled suppression of the privileges accorded under the First Amendment in forbidding the activities of petitioner here, which I find beyond the constitutionally protected areas of freedom of speech and press.

One thrust of the majority opinion is that the ordinance sweeps up all persons who conduct any hawking, peddling or giving away of material *on the sidewalks along* the public streets. The ordinance does not mention sidewalks, nor does it expressly forbid such activity on the sidewalk. Its prohibition is solely against such activity *along* or upon the public highway. A reasonable interpretation which we must give to the ordinance would be to forbid only that activity at any place along the highway where it would interfere with the free flow of traffic. Certainly that activity not directed to the highway traffic on parts of a sidewalk *along* the highway is not proscribed. The majority opinion can be construed as holding the

buildings facing the sidewalks adjacent to the highway also are swept up by the language of the ordinance. I do not so read the ordinance.

In *Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 60 [216 P.2d 859], the court states: "To comply with the constitutional requirement of due process of law, the crime for which a defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well·enough known to enable those persons within its reach to understand and correctly apply them. 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' [Citations.]

"Although higher standards of certainty will be required of penal than of civil statutes [citation], a statute is sufficiently certain if it employs words of long usage or with a common law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ.' [Citations.] For example, the courts have upheld statutes employing such terms as: 'to make a diligent effort to find the owner' [citation]; 'unreasonable speed' [citation]; 'unjustifiable physical pain or mental suffering' [citation]; 'practice law' [citation]; and 'to the annoyance of any other person' [citation]."

Again in *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 405 [89 Cal.Rptr. 78], the court states: "It is true that '[c]ivil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts. . . .' [Citations.] However, ' "[r]easonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language" [Citation.] It will be upheld if its terms may·be made reasonably certain by reference to other definable sources.' (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; *People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].) '[A] statute is sufficiently certain if it employs words of long usage or with a common law meaning, "notwithstanding an element of degree in the definition as to which estimates might differ." ' [Citations.]"

It is well settled that mathematical certainty is not required; some matter of degree is involved in most penal statutes. (*People* v. *Belous* (1969) 71 Cal.2d 954, 960 [80 Cal.Rptr. 354, 458 P.2d 194].)

The language challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. (See *State* v. *Taylor* (Hawaii 1967) 425 P.2d 1014, 1021-1023; cf.,

*Adderley* v. *Florida* (1966) 385 U.S. 39, 43 [17 L.Ed.2d 149, 153, 87 S.Ct. 242].) The ordinance is directed toward conduct rather than expression. It prohibits activity along or upon a roadway that will interfere with the free flow of traffic. This is clear by a reading of section 2 of the ordinance. In *Boyce Motor Lines* v. *United States* (1952) 342 U.S. 337, 340 [96 L.Ed 367, 371, 72 S.Ct. 329], in upholding a regulation which required avoidance of driving of flammables through congested thoroughfares "so far as practicable, and, where feasible," the court stated:

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

I find the ordinance is not vague or uncertain, that it is reasonable, that it is limited in scope, and constitutes a valid legislative enactment in furtherance of the public safety and welfare without abridging basic First Amendment freedoms. (See *Cox* v. *Louisiana, supra,* 379 U.S. 536, 554-555 [13 L.Ed.2d at pp. 483-484]; *Cameron* v. *Johnson* (1968) 390 U.S. 611, 616 [20 L.Ed.2d 182, 187]; *Pain* v. *Municipal Court, supra,* 268 Cal.App. 2d 151; see also *Landry* v. *Dailey* (N.D.Ill. 1968) 280 F.Supp. 938, 950-952, 967; cf., *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992].)

I would affirm the order discharging the alternative writ of prohibition and denying the request for a peremptory writ of prohibition.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1971. Burke, J., was of the opinion that the petition should be granted.